Affirmed and Memorandum Opinion filed August 31, 2006








Affirmed and Memorandum Opinion filed August 31, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00703-CR

_______________

 

GREGORY BRAZIEL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 997,060

                                                                                                                                               


 

M E M O R A N D U M  OP I N I O N

A jury
convicted appellant Gregory Braziel of the offense of aggravated robbery, and
sentenced him to confinement for life in the Institutional Division of the
Texas Department of Criminal Justice.  In two issues, Braziel challenges the
legal and factual sufficiency of the evidence supporting his conviction. 
Because we conclude the evidence is legally and factually sufficient to sustain
his conviction, we affirm.








I. Factual and Procedural Background

On the
evening of August 7, 2004, Darius Fail-Brigham, the owner of Momentum Barber
Shop, had two customers in his store.  Brigham was cutting the hair of customer
Marcel, a/k/a ACooler,@ while another customer, Trovett Gibson, waited for a haircut.  Braziel
knocked on the door of the barber shop and asked Brigham for a haircut. 
Initially, Brigham told Braziel the shop was closed, but eventually agreed to
cut Braziel=s hair.  Braziel told Brigham he was going outside to tell his wife that
he would be in the shop, and left the barber shop briefly.  Braziel returned
carrying a backpack.  He drew a sawed-off shotgun out of the backpack, and told
the three men,Ayou better break y=all self.@[1]  Brigham and Cooler put their hands
in the air.  As Gibson stood, he put his hand in his pocket to answer a ringing
cell phone, and Braziel ordered him to remove his hands from his pocket. 
According to Gibson, Braziel grabbed the cell phone and told Gibson to lie down
on the ground.

Braziel
pointed the gun at Brigham and Gibson and demanded money.[2] 
Gibson had approximately $100, and Brigham had $150 in the pocket of his smock. 
It is not clear whether Gibson or Braziel told Brigham to take Gibson=s money from his pocket, but the
witnesses agree that Gibson told Brigham where his money was located, and
Brigham reached into Gibson=s pocket to remove Gibson=s money.  As he did so, Brigham=s own money fell from the pocket of
his smock.   When Brigham had Gibson=s money in his hand, Braziel shot
Brigham in the right leg.  Braziel then grabbed or tried to grab the money.[3]








Brigham
struggled with Braziel for the gun, and Gibson joined in the fight, but they
could not wrest the gun from Braziel.  Gibson held the trigger of Braziel=s gun to prevent him from firing
again, and Brigham reached for a pocket knife and stabbed Braziel in an effort
to make him drop the gun.  Finally, Gibson pulled the gun from Braziel and
attempted to shoot him, but the gun did not discharge.  Gibson then hit Braziel
on the head with the butt of the gun.  Gibson testified that when he hit
Braziel on the head, Braziel dropped Gibson=s cell phone and the money he had
obtained in the robbery.  Gibson went outside the shop to flag down help. 
While outside, Gibson saw Braziel leave the barber shop and speed away in a car
that had been parked at the side of the shop. 

Officer
Burleson of the Houston Police Department (AHPD@) arrived at the scene at 8:20 p.m. 
According to his testimony at trial, Officer Burleson saw Brigham in a puddle
of blood, and observed blood all over the barber shop.  Officer Burleson
retrieved a knife and a shotgun from the scene.

Brigham
was transported by ambulance to a hospital, and his injured leg was amputated. 
HPD Sergeant  Jammer performed a follow-up investigation with Brigham at the
hospital.  Brigham informed Sergeant Jammer, Athe guy that shot me is being treated
in the next room.@  Brigham also said he had Astabbed [Braziel] at least two times
in the head area.@  The day after this conversation, Sergeant Jammer sent a
crime scene unit to the hospital to verify Braziel=s identity.  Sergeant Jammer then
prepared a photo spread, from which both Brigham and Gibson positively
identified Braziel.  

On
October 28, 2004, Braziel was indicted for the aggravated robbery of Brigham. 
The indictment included an enhancement paragraph.   Braziel entered a plea of
not guilty, and the trial court submitted a charge authorizing the jury to
convict Braziel of the lesser included offense of aggravated assault.  The jury
found Braziel guilty of aggravated robbery and assessed punishment at
confinement for life in the Institutional Division of the Texas Department of
Criminal Justice.








II.  Issues Presented

In two
issues, Braziel contends the evidence is legally and factually insufficient to
support his conviction because the State failed to demonstrate he had the
intent to commit theft or attempted theft of Brigham=s property at the time the firearm
was used or exhibited.  According to Braziel, the record shows that at the time
of the shooting, Braziel was in the course of committing theft of Gibson=s property, not Brigham=s property.  Thus, he argues, the
State failed to prove he committed aggravated robbery of Brigham as charged in
the indictment.  We disagree.

III.  Analysis

A.        Legal
Sufficiency of the Evidence

1.         Standard
of Review

When an
appellant challenges both the legal and factual sufficiency of the evidence, we
address the legal sufficiency challenge first because an affirmative finding on
that issue will result in a rendition of a judgment of acquittal, while a
finding of factual insufficiency warrants a remand for a new trial.  Hartis
v. State, 183 S.W.3d 793, 803 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
When reviewing the legal sufficiency of the evidence, we examine the evidence
in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Mason v.
State, 905 S.W.2d
570, 574 (Tex. Crim. App. 1995) (en banc).  We do not ask whether we believe
the evidence at trial established guilt beyond a reasonable doubt.  Jackson,
443 U.S. at 318B19.  Rather, we view the evidence in the light most favorable
to the jury verdict, and determine whether any rational trier of fact could
have found the essential elements of aggravated robbery beyond a reasonable
doubt.  See Mason, 905 S.W.2d at 575; see also  Tex. Penal Code Ann. ' 29.03 (Vernon 2003). 








2.       The Evidence is Legally Sufficient to Support the
Conviction

Braziel
argues that the State failed to prove the allegations as charged in the
indictment.  Specifically, Braziel relies on Burrell v. State for the
proposition that Awhere a person, place or thing necessary to be mentioned in
the indictment is described with unnecessary particularity, all circumstances
of description must be proven and cannot be rejected as surplusage . . . .@ 526 S.W.2d 799, 802 (Tex. Crim. App.
1975) (internal citations omitted).  However, Burrell was overruled in Gollihar
v. State, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001).  A variance between
the wording of an indictment and the evidence presented at trial is now fatal
only if it is material and prejudices the defendant=s substantial rights.  See id.
at 257.  Accordingly, we begin by determining whether there is a variance
between the indictment and the proof offered at trial.

The
indictment alleges that Braziel, Awhile in the course of committing
theft of property owned by [Brigham] . . . intentionally and knowingly
threaten[ed] and place[d] Brigham in fear of imminent bodily injury and death,
and did then and there use and exhibit a deadly weapon, to-wit: shooting
[Brigham]=s leg with a firearm.@  According to Braziel, the evidence is legally insufficient
to support his conviction under this indictment because the undisputed evidence
shows he was actually committing a theft of Gibson=s property rather than Brigham=s property when he shot Brigham.  We
disagree with Braziel=s characterization of the evidence.








            The State
presented evidence that Braziel exhibited a deadly weapon and shot Brigham
during the theft or attempted theft of Brigham=s property.  See Tex. Penal Code Ann. '' 29.02, 29.03 (Vernon 2003). 
Although Brigham did not immediately give Braziel the money in his smock,
Brigham testified that Braziel insisted he would not leave the barber shop
until one of the three men gave him money.  According to Brigham, Braziel stated,
ASomebody better give me some money. 
Before I walk out of here, somebody=s going to give me some money.@  Thus, Braziel=s demands for money were directed not
only to Gibson, but to Brigham and Cooler as well.

In
addition, Gibson testified that some of Braziel=s threats were directed specifically
at Brigham:

A:        When he [Braziel] turned to Mr. Brigham he said, AGive me the money.@

Q:        Okay.  So Mr. Bingham [sic], he wasn=t asking Mr. Bingham [sic] for any of his money, was
he?

A:        He was asking Mr. Bingham [sic] forChe said, AGive
me the money.@  He had the gun on me, asked me for money.  Then he put
the gun on Mr. Bingham [sic] and asked for money, said, AGive me the money.@

Finally,
Brigham testified that Braziel not only demanded money from him, but actually
took or attempted to take the money that fell from Brigham=s smock:

Q:        And the defendant did not take your money?

A:        He was trying to grab whatever he could after he shot me.

* * * * *

Q:        Mr.
Gibson----I=m sorry, the person that was in the barber shop did
not take your money?

A:        He
had to, my money fell down with Mr. Gibson=s
money.

* * * * *

Q:        Okay. 
So the answer that you=ve been telling this jury that he didn=t take anything, you never gave him anything, now you=re changing your story and you=re staying that he took $150?                                          

A:        I couldn=t recall the exact amount that he
gaveCthat he took, but I remember my money
falling as I bent over getting the money out of Mr. Gibson=s pocket after he shot me.








Contrary
to Braziel=s assertion, the uncontroverted evidence demonstrates that the robbery
was not limited to Gibson, but included Brigham.  As the State points out,
Braziel=s demands and threats to the three
men constituted one continuous criminal episode.  See Oggletree v. State,
851 S.W.2d 367, 369B70 (Tex. App.CHouston [1st Dist.] 1993, pet. ref=d) (rejecting the appellant=s argument that his attempted theft
represented a separate and distinct criminal episode from his second appearance
where he produced a knife); Thomas v. State, 708 S.W.2d 580 (Tex. App.CHouston [14th Dist.] 1986, pet. ref=d) (holding the criminal acts
committed by the appellant occurred in one continuous criminal episode);
Rabb v. State, 681 S.W.2d 152 (Tex. App.CHouston [14th Dist.] 1984, pet. ref=d) (recognizing the criminal acts of
the appellant were committed in an unbroken chain of events).  While Braziel
was exhibiting a deadly weapon to Brigham, Gibson, and Cooler, money fell from
Brigham=s smock, and Braziel=s demands for money, particularly
when made at gunpoint, manifested his intention to take control of Brigham=s money.  See Guevara v. State,
152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (AIntent may also be inferred from
circumstantial evidence such as acts, words, and the conduct of the appellant.@).  

We
conclude there is no variance between the indictment and the proof offered at
trial.  After viewing the evidence in the light most favorable to the verdict,
we hold the evidence is legally sufficient to support Braziel=s conviction for aggravated robbery. 
See Tex. Penal Code Ann. ' 29.03 (Vernon 2003).[4] 
While Braziel was in the course of committing theft with the intent to obtain
control of Brigham=s property, he intentionally or knowingly threatened and
placed Brigham in fear of imminent bodily injury or death, and he used and
exhibited a deadly weapon that caused serious bodily injury to Brigham.  See
id. at '' 29.02, 29.03 (Vernon 2003).  Therefore, a rational trier of fact could
find the essential elements of aggravated robbery as charged in the indictment
beyond a reasonable doubt.  See Mason, 905 S.W.2d at 575.  We overrule
Braziel=s first issue.








B.        Factual
Sufficiency of the Evidence

Braziel
next argues that the evidence is factually insufficient to support his
conviction because the State failed to prove he intended to commit theft of
Brigham=s property at the time a firearm was
used or exhibited.  Braziel again argues that he was committing theft or
attempted theft of Gibson=s property, not Brigham=s property, at the time he shot
Brigham.

1.         Standard
of Review

In
reviewing the factual sufficiency of the evidence, we will set aside the
verdict only if (1) the evidence supporting the verdict, considered alone, is
too weak to support the finding of guilt beyond a reasonable doubt, or (2)
contrary evidence, if present, is strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Zuniga v.
State, 144 S.W.3d 477, 484B85 (Tex. Crim. App. 2004).  The only question in a factual
sufficiency review is whether, considering all the evidence in a neutral light,
the jury was rationally justified in finding guilt beyond a reasonable doubt.  Id.
at 484.  When reviewing the evidence, we must avoid intruding on the factfinder=s role as the sole judge of the
weight and credibility of the witness testimony.  Johnson v. State, 23
S.W.3d 1, 9 (Tex. Crim. App. 2000) (en banc).  We do not re-evaluate the
credibility of witnesses or the weight of evidence, and we will not substitute
our judgment for that of the factfinder.  Johnson v. State, 967 S.W.2d
410, 412 (Tex. Crim. App. 1998). 

2.       The
Evidence is Factually Sufficient to Support the Conviction

Braziel
states that he separately challenges the factual sufficiency of the evidence Ato avoid any question of
multifariousness.@  However, this section of his brief cites no facts, instead
incorporating by reference Braziel=s prior arguments:








As urged more fully in Appellant=s First Point of Error, the State was
required to prove that [Braziel] shot [Brigham] in the leg during the course of
theft or attempted theft of [Brigham=s] property.  As also urged above,
the record shows that [Braziel] was committing theft or attempted theft of
[Gibson]=s property, not [Brigham=s], at the time the shotgun
discharged.  The jury=s finding of guilt was against the great weight and
preponderance of the evidence.

We are
cognizant of our obligation to Aconsider the most important evidence that the appellant
claims undermines the jury=s verdict.@  See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003).  Here, however, Braziel points to no specific evidence, instead
insisting that A[t]he record is undisputed that  [Braziel] was in the course
of committing theft of property belonging to Gibson, and not the complainant
named in the indictment, at the time of the shooting.@  

As
previously discussed, this argument is contradicted by the record.  Both Gibson
and Brigham testified to the events occurring in the barber shop, and both
testified that Braziel pointed a gun at Brigham, demanded money from him, and
shot him.[5]  Their
testimony is uncontroverted.  Brigham further testified that $150 fell from his
smock while he was reaching into Gibson=s pockets, and stated that Braziel Atr[ied] to grab whatever he could
after he shot me.@  As previously discussed, Braziel=s demands for money are further
evidence of his intent to take the money Brigham dropped.  








Braziel
does not dispute that he shot Brigham, and this fact also supports an inference
that Braziel intended to rob Brigham.  See Cooper v. State, 67 S.W.3d
221, 224 (Tex. Crim. App.  2002) (holding that a theft occurring immediately
after an assault will support an inference that the assault was intended to
facilitate the theft).  Although Brigham offered contradictory testimony,
claiming both that Braziel did and did not take money from him, no evidence
that Braziel succeeded in obtaining money from Brigham is necessary to sustain
the conviction.  See Romo v. State, 700 S.W.2d 633, 635 (Tex. App.CHouston [14th Dist.] 1985, no pet.) (AThe code does not require the completion
of the act of theft; rather, the act need only be committed with the intent
to obtain or maintain control of the property.@); King v. State, 157 S.W.3d
873, 875 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d) (holding the evidence legally and
factually sufficient to support appellant=s conviction for aggravated robbery
where appellant entered appellant=s store, left and returned with a
backpack, drew a gun from the backpack and shot at the storekeeper, and fled
when the storekeeper shot back, but never demanded or took money). 

After
viewing all of the evidence neutrally, we conclude the evidence supporting the
verdict is not too weak to support the finding of guilt beyond a reasonable
doubt, nor is the contrary evidence so strong that the beyond‑a‑reasonable‑doubt
standard could not have been met.  See Escamilla v. State, 143
S.W.3d 814, 821 (Tex. Crim. App. 2004).  Accordingly, we hold the evidence is
factually sufficient to prove Braziel committed aggravated robbery.  We
overrule appellant=s second issue.

IV. Conclusion

We hold
the evidence is legally and factually sufficient to support Braziel=s conviction for aggravated robbery
of Brigham as charged in the indictment.  Accordingly, we affirm the judgment
of the trial court.

 

 

/s/        Eva M. Guzman

Justice

 

 

Judgment rendered and Memorandum Opinion filed August
31, 2006.

Panel consists of Justices Hedges, Yates, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  According to testimony presented at trial, this is
street slang for Alie down and give me your money.@ 





[2]  Brigham testified that Braziel pointed the gun at
him first, then pointed the weapon at Gibson; Gibson testified that Braziel
pointed the gun at him first, then pointed the weapon at Brigham.  Although the
order is not clear, both witnesses testified that Braziel pointed the gun at
each of them in turn, and demanded money from each.





[3]  Witnesses Gibson and Brigham testified that Braziel
grabbed or tried to grab some or all of the money.  Gibson testified that
Braziel did obtain possession of Gibson=s
money.  Brigham testified that Braziel did not take Brigham=s money, but he also testified that Braziel grabbed or
tried to grab money belonging to Brigham and to Gibson after the shooting.  





[4]  As to the remaining elements of the offense of
aggravated robbery, a reasonable jury could find that Braziel displayed the
requisite intent to rob Brigham and to place Brigham in fear of bodily injury
or death when Braziel  pointed the sawed-off shotgun at Brigham and demanded 
money.  See Tex. Penal Code Ann.
'' 29.02, 29.03 (Vernon 2003); Guevara, 152
S.W.3d at 50.  As Brigham testified, he was in fear of bodily injury or death when
Braziel was threatening him, and Braziel not only exhibited a deadly weapon to
Brigham, but used the weapon to injure Brigham so severely that his right leg
had to be amputated.  This injury constitutes a Aserious bodily injury@ as a matter of
law.  See Tex. Penal Code Ann.
' 1.07(a)(46) (Vernon Supp. 2005).





[5]  Cooler and Braziel did not testify.