**Ervin Dwayne OGGLETREE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–92–00096–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 18, 1993.

Rehearing Denied April 15, 1993.

Lana Gordon, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Mary Lou Keel, Stuart Burns, Houston, for appellee.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

OPINION

HEDGES, Justice.

A jury found appellant, Ervin Dwayne Oggletree, guilty of two counts of aggravated robbery. The trial court assessed his punishment, enhanced by two prior felony convictions, at 35–years confinement on each count, with the sentences to be served concurrently. We affirm in part and reverse and remand in part.

Shortly after midnight on December 19, 1990, John Corley and Arnold Eaton, employees of an AppleTree grocery store, noticed that appellant was loading packages of meat into plastic bags. Corley and Eaton observed another man who entered the store and asked for paper bags with which to clean out his car. Obtaining the bags, the man left the store, got into his car, but did not drive away.

Over two hours later, Corley saw appellant approach the front of the store carrying plastic bags full of what were clearly packages of meat. Although Corley and

Eaton called for him to stop, appellant left the store and began running across the parking lot. Corley gave chase, and Eaton followed. Eaton spotted the man who had requested the paper bags sitting in his car trying to start it. He went to the car and tried to detain the driver.

As appellant ran through the parking lot, the grocery bags split open, and the meat fell out. Corley chased appellant to the edge of the parking lot. He then returned to pick up the meat and to call the police from a pay phone outside the store.

After he had called 911, Corley joined Eaton at the car. While they were waiting for the police, appellant returned. He appeared angry. Holding an open knife, he told the employees, "Let the man go, he had absolutely nothing to do with it." Appellant then approached Corley with the knife and threatened, "I'll get you." Corley backed away, and he and Eaton persuaded appellant to leave.

Appellant proceeded to walk across the street. The driver of the car suddenly started his car, crossed the parking lot, and stopped to pick up appellant. Shortly thereafter, a Harris County deputy sheriff apprehended appellant and the driver of the car. When he inventoried the car, the deputy found a knife under the right front passenger seat.

Appellant was charged with two counts of aggravated robbery. The first count alleged that on December 19, 1990, appellant did:

> while in the course of committing theft of property owned by JOHN PAUL CORLEY, and with intent to obtain and maintain control of the property, INTENTIONALLY AND KNOWINGLY THREATEN AND PLACE JOHN PAUL CORLEY IN FEAR OF IMMINENT BODILY INJURY AND DEATH, and the Defendant did then and there use and exhibit a deadly weapon, to-wit, A KNIFE.

The second count alleged:

> It is further presented that in Harris County, Texas, ERVIN DWAYNE OGGLETREE, hereafter styled the Defendant, heretofore on or about DECEM-

BER 19, 1990, did then and there unlawfully, while in the course of committing theft of property owned by ARNOLD PAUL EATON, and with intent to obtain and maintain control of the property, INTENTIONALLY AND KNOWINGLY THREATEN AND PLACE ARNOLD PAUL EATON IN FEAR OF IMMINENT BODILY INJURY AND DEATH, and the Defendant did then and there use and exhibit a deadly weapon, to-wit, A KNIFE.

In his first point of error, appellant asserts that the evidence is insufficient to sustain his conviction. Specifically, he asserts that there is no evidence that he used or exhibited a knife "in the course of committing theft." TEX.PENAL CODE ANN. § 29.-01(1) (Vernon 1989). Appellant argues that the theft of the meat and the departure from the store represent a separate and distinct incident from his second appearance, in which he brandished the knife. As such, the nexus between the act of theft and the use or exhibition of a deadly weapon is ruptured. Therefore, he concludes, the State has failed to establish an essential element of the offense of which he was convicted.

Viewing the evidence in the light most favorable to the verdict, we must determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 27, 61 L.Ed.2d 560 (1979); *Villalon v. State*, 791 S.W.2d 130, 132 (Tex. Crim.App.1990).

The Texas Penal Code provides that a person commits *aggravated robbery* if he commits robbery and he "uses or exhibits a deadly weapon." TEX.PENAL CODE ANN. § 29.03(a)(2) (Vernon Supp.1993). A person commits *theft* if he "unlawfully appropriates property with intent to deprive the owner of the property." TEX.PENAL CODE ANN. § 31.03(a) (Vernon 1989). A person commits *robbery* if, in the course of committing theft and with intent to obtain or maintain control of the property, he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or

death." Tex.Penal Code Ann. § 29.02(a)(2) (Vernon 1989). *In the course of committing theft* means "conduct that occurs in an attempt to commit, during the commission, or in *immediate flight* after the attempt or commission of theft." Tex.Penal Code Ann. § 29.01(1) (Vernon 1989) (emphasis added).

In addressing this point of error, we must decide whether appellant's return to the scene to confront Corley and Eaton is part of his "immediate flight" after the attempted theft. Appellant asserts that when he brandished the knife, he was no longer in the course of committing theft.· Rather, he had escaped from the parking lot of the store and had returned, presumably to free his confederate. Further, he urges, his second appearance is too far removed from the theft incident to constitute "immediate flight." Although there is no testimony to indicate precisely when appellant returned, it is clear that his reappearance in the parking lot occurred only after Corley had time to pick up the spilled meat, return it to the store, call the police and join Eaton in attempting to detain the driver of the vehicle that Corley and Eaton believed—correctly—to be appellant's getaway car.

Neither the penal code nor case law defines "immediate flight." We must determine, from a comparative analysis of relevant case law, whether the circumstances of this case are such that the knife-wielding conduct of appellant comes within the ambit of "immediate flight" or whether the theft and the use of a deadly weapon occurred in two separate and discrete incidents. We look to two cases whose facts closely resemble those of this case to assist in our decision.

In *Rabb v. State*, 681 S.W.2d 152 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd), the defendant tried to purchase merchandise with a stolen credit card. The defendant left the store while the sales clerk was trying to contact the credit card company. A security guard intercepted the defendant in the mall and asked him to return to the store. The defendant complied. Once in the store, the defendant

pulled a gun and threatened to shoot. Security guards chased him through the crowded mall and into the parking lot, where one of the guards shot him in the hip. *Rabb*, 681 S.W.2d at 153.

The court of appeals rejected the defendant's contention that because his assaultive conduct occurred after the attempted theft had ended, it did not occur "in the course of committing theft." *Rabb*, 681 S.W.2d at 154. In overruling the defendant's point of error, the court noted that the offense of robbery includes any violence that occurs while in immediate flight from the scene of a theft.

In *Rabb*, the assaultive conduct occurred after the theft attempt had been abandoned and after the suspect had returned to the store. The defendant had already left the store when he was approached by the security guard who asked him to return. Only after his return did the defendant attempt to escape using a deadly weapon. There was an unbroken chain of events that began with the attempted theft and ended when a security guard shot the defendant.

In *Thomas v. State*, 708 S.W.2d 580 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd), a Wal–Mart security guard saw the defendant conceal store merchandise under her clothing. The officer followed the defendant to the front of the store. After the defendant passed the checkout counter without paying, the guard stopped her and took her to the store's office. While they were waiting for the police, the defendant attacked the guard and tried to escape. The episode lasted from 13 to 20 minutes. The court rejected the defendant's contention that the evidence was insufficient to prove that her violent conduct was related to an immediate attempt to escape. *Id.* at 581.

We hold that the case before us is closely analogous to *Rabb* and *Thomas*. As in those two cases, appellant engaged in one continuous, criminal episode, not in a series of incidents. He did not accomplish a successful escape; rather, for reasons unclear in the record, he remained in the vicinity and reappeared to attempt to liberate his confederate. His flight across the parking

lot and his reappearance to threaten Corley and Eaton occurred without intervening circumstances. Appellant himself chose to continue his criminal episode by returning to assist his accomplice. A rational trier of fact could conclude that appellant displayed his knife during immediate flight from the theft.

We overrule point of error one.

In point of error two, appellant asserts that he was convicted for a second offense of aggravated robbery in violation of his federal and state constitutional rights against double jeopardy.

The double jeopardy clause of the fifth amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This provision is applicable to the states through the fourteenth amendment. *See Iglehart v. State*, 837 S.W.2d 122, 126 (Tex.Crim.App. 1992) (citing *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)). One of the guarantees embodied in the double jeopardy clause is the protection against multiple punishments for the "same offense." *Iglehart*, 837 S.W.2d at 127 (citing *North Carolina v. Pierce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)).

Appellant complains that although he committed only one theft offense, he was charged with two aggravated robberies. The State argues that appellant's conduct constituted two separate offenses. Specifically, the State asserts that when appellant stole several packages of meat "jointly owned" by Corley and Eaton, he committed two acts of theft—one against Corley and one against Eaton. Therefore, the State concludes, appellant is eligible to be charged with and convicted of two acts of aggravated robbery.

The State has cited no authority for the proposition that store employees are deemed "joint owners" of their employer's merchandise. The Texas Penal Code defines "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."

TEX.PENAL CODE ANN. § 1.07(a)(24) (Vernon Supp.1993). "Possession" means "actual care, custody, control, or management." TEX.PENAL CODE ANN. § 1.07(a)(28) (Vernon 1974). Certainly, both Corley and Eaton had a greater right to possession of the meat than appellant. Their greater possessory claims do not mean, however, that they were "joint owners" of the meat.

A corporation cannot itself testify. Therefore, when a corporation is the owner of the property that has been stolen, it is the preferable pleading practice to allege "special" ownership in a natural person acting for the corporation. *Compton v. State*, 607 S.W.2d 246, 250 (Tex.Crim.App. 1980) (op. on reh'g); *see also Freeman v. State*, 707 S.W.2d 597, 605 (Tex.Crim.App. 1986); *Sowders v. State*, 693 S.W.2d 448, 451 (Tex.Crim.App.1985). The title owner of the meat and sole victim of the attempted theft in this case was AppleTree. The State should have alleged either Corley or Eaton as the natural person acting for AppleTree, but not both.

The evidence shows that only one attempted theft from one victim—AppleTree—occurred. Where there is only one theft, there can be only one conviction for aggravated robbery, no matter how many individuals might have been threatened or harmed with a deadly weapon. *See Cook v. State*, 840 S.W.2d 384, 389 (Tex.Crim. App.1992); *Simmons v. State*, 745 S.W.2d 348, 351–52 (Tex.Crim.App.1987). Because the indictment in this case charges two violations for the same act of theft, the State may not charge appellant with more than one offense. *Ex parte Crosby*, 703 S.W.2d 683, 685 (Tex.Crim.App.1986). We hold that appellant was convicted twice of the same aggravated robbery in violation of his federal and state constitutional rights against double jeopardy.

We sustain point of error two.

We affirm as to count one. We reverse the judgment on count two and order an acquittal on that count. TEX.R.APP.P. 80(b), (c).