**Melvin Charles SWEED, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–08–00349–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 25, 2010.

Discretionary Review Granted Oct. 13, 2010.

Jerome Godinich, Jr., Houston, TX, for appellant.

Melvin Charles Sweed, Jr., Lovelady, TX, pro se.

Carol M. Cameron, Assistant District Attorney, for appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

A jury found appellant, Melvin Charles Sweed, Jr., guilty of aggravated robbery[1] and assessed punishment at thirty-eight years' imprisonment. Appellant stipulated to two prior felony convictions, which enhanced his punishment. In a single point of error, appellant argues that the trial court erred by failing to grant his request for theft to be included in the jury charge as a lesser-included offense. In the judg-

ment, the enhancement paragraphs created by appellant's prior felonies were marked N/A, or "not applicable," rather than true. The State asks that this Court correct the judgment by modifying it to reflect that appellant pled true to the State's two enhancement paragraphs.

We modify the judgment and as modified affirm.

## Background

On September 6, 2007, appellant went to the Haverstock Apartments at 5619 Aldine Bender Road, Harris County, Texas. On that day, several work crews under the supervision of Sixto Mondragon were at the apartment complex. Mondragon observed appellant, who was not one of his employees, among the work crews throughout the morning. At some point that morning, a second person arrived and spoke with appellant. After this unidentified second person arrived, Mondragon saw one of his employees, Jose,[2] running and yelling, "[H]e's got a knife." Mondragon saw appellant walking off with "quick strides" and carrying something covered up, but he did not see what it was. Mondragon and others followed appellant at a distance because "[w]e thought he probably had something." Jose told Mondragon that appellant had stolen a nail gun, and Mondragon called the police. Other workers saw appellant enter an apartment. Mondragon and his father positioned themselves so that they could watch the apartment until the police arrived.

Appellant remained in the apartment between five and twenty minutes. While he was on watch waiting for the police to arrive, Mondragon saw appellant leave. When appellant left the apartment, he had

---

1. *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2003) (providing elements for aggravated robbery).

2. The record does not include a last name for Jose and Jose did not testify.

changed his clothes. Appellant walked across the apartment complex parking lot, approximately one-hundred and fifty feet, to a group of unidentified men and spoke with them for approximately five minutes. Mondragon testified that as appellant was returning to the apartment he saw Mondragon and recognized him. Mondragon stated, "So, when he got to about halfway to the point where the parking lot was, he pulled out a knife and opened it." Appellant then approached Mondragon and waved the knife at Mondragon's chest level. Mondragon thought appellant was going to stab him and was afraid. When appellant was about three or four feet away, Mondragon put his hand in his pocket, "acting like I had a gun or something." Appellant looked at him, walked away, and went back to the apartment. He did not exit again before the police arrived five or ten minutes later.

When the deputies arrived, they were directed to the apartment in which appellant was hiding. They knocked on the door and obtained the consent of the tenant to enter. The deputies found appellant hiding in the bedroom. They also found a knife near appellant and a nail gun belonging to Mondragon, but they never found the toolbox or other tools that Mondragon later accused appellant of stealing. The deputies arrested appellant, and a grand jury indicted him for the aggravated robbery of Sixto Mondragon.

At appellant's trial, Mondragon testified regarding the events of the morning appellant stole the nail gun. He testified that he noticed appellant around the work crew most of the morning. However, he never saw appellant approach Jose with the knife. Rather, he only saw Jose running and exclaiming, "[H]e's got a knife." Mondragon also testified that he did not originally know what was in the bundle appellant carried away from the work site, but

he stated that he believed that the bundle contained a large nail gun, a toolbox, drills, and smaller nail guns. Mondragon testified that the large nail gun was worth around three hundred dollars "brand new."

During the charge conference, appellant's trial counsel requested an instruction on the lesser included-offense of theft. The State opposed the request and argued that if the theft instruction were given, the court should provide an instruction on aggravated assault as an additional lesser-included offense. The trial court denied both requests. Appellant's trial counsel objected and preserved the error by explaining his objection to the trial judge and asking that the desired charge be included in the record.

The jury found appellant guilty of aggravated robbery. His sentence was enhanced because of his prior felony convictions for possession of a controlled substance and for burglary of a motor vehicle. Appellant also had three prior convictions for assault. Appellant stipulated to two prior felony convictions, distribution of a controlled substance and burglary of a motor vehicle. The judge instructed the jury on these. Although appellant stipulated to these and the judge instructed the jury on them, in the judgment these are marked "N/A," or "not applicable."

## Instruction on Lesser–Included Offense

In his sole point of error, appellant argues that the trial court erred in denying his request to instruct the jury on the lesser-included offense of theft because there was more than a scintilla of evidence negating the State's allegation that he threatened Mondragon "in the course of committing theft." Appellant does not contest the theft of the large nail gun.

### 1. *Standard of Review*

An offense is a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex.Code Crim. Proc. Ann. art. 37.09(1) (Vernon 2006). A defendant is entitled to an instruction on a lesser-included offense when (1) the proof for the offense charged includes the proof necessary to establish the lesser-included offense and (2) some evidence exists in the record that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim.App.2007) (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App.1994)). The first step in the analysis is a question of law. *Id.* at 535. It requires comparison of the elements of the offense as alleged in the indictment with the elements of the potential lesser-included offense. *Id.* at 535–36. If the elements of the lesser offense are "established by proof of the same or less than all the facts required to establish the commission of the offense charged," the first prong of the test is satisfied. *Id.* at 536 (quoting Tex.Code Crim. Proc. Ann. art. 37.09(1)).

The second step in the analysis asks whether there is evidence that supports giving the instruction to the jury. *Id.* In this step of the analysis, anything more than a scintilla of evidence may suffice to entitle the defendant to a charge on the lesser-included offense. *Id.* The evidence produced must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Id.* (quoting *Forest v. State*, 989 S.W.2d 365, 367 (Tex.Crim.App.1999)).

### 2. *Discussion*

Here, the indictment alleged that appellant, "while in the course of committing theft of property owned by Sixto Mondragon ... and with intent to obtain and maintain control of the property, intentionally and knowingly threaten[ed] and place[d] SIXTO MONDRAGON in fear of imminent bodily injury and death, and the Defendant did then and there use and exhibit a deadly weapon, to wit: A KNIFE." Appellant argues that the trial court committed reversible error by failing to grant appellant's request for the lesser-included charge of theft.

A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03(a) (Vernon Supp.2009). A person commits robbery if, "in the course of committing theft" and "with intent to obtain or maintain control of the property," he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *See* Tex. Penal Code Ann. § 29.02(a)(2) (Vernon 2003). To prove aggravated robbery, the State must prove robbery plus an aggravating factor. *See* Tex. Penal Code Ann. § 29.03(a) (Vernon 2003). Aggravated robbery occurs when "a person commits robbery as defined in Section 29.02," and he "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2).

The Penal Code defines "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." Tex. Penal Code Ann. § 29.01(1) (Vernon 2003). Thus, "the offense of robbery includes any violence *in the course of effectuating the theft* as well as any violence while *in immediate flight* from the scene of the theft." *White v. State*, 671 S.W.2d 40, 42 (Tex.Crim.App.1984) (emphasis added) (quoting *Lightner v. State*, 535 S.W.2d 176, 177 (Tex.Crim.App.1976)). This definition "proscribes the use of violence not only in the taking of the property, but also in the

immediate efforts of the thief to keep the stolen property." *Id.* (emphasis omitted). No completed theft is required for the proscribed conduct to constitute the offense of robbery; nor is it necessary that the victim of the theft or attempted theft and the victim of the robbery be the same. *White,* 671 S.W.2d at 41–43(affirming aggravated robbery conviction of driver of getaway car who shot pursing bystander in order to free companion who had attempted theft of purse); *see Lightner,* 535 S.W.2d at 177–78 (affirming aggravated robbery conviction of appellant who drove car towards officer flagged down by women who discovered money missing from cash register when appellant left cleaners).

■ "The element 'intent to obtain or maintain control of the property' in [Section 29.02] 'deals with the robber's state of mind regarding the property' involved in the theft or attempted theft, and not his state of mind in the assaultive component of the offense of aggravated robbery." *White,* 671 S.W.2d at 42 (quoting *Ex parte Santellana,* 606 S.W.2d 331, 333 (Tex. Crim.App.1980)); *see McCall v. State,* 113 S.W.3d 479, 481 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (stating that "the element of 'intent to obtain or maintain control of the property' addresses the robber's state of mind during the theft or attempted theft, not his state of mind during the assault"). Thus, "violence accompanying an escape immediately subsequent to an attempted theft can constitute robbery under [Section 29.02]." *White,* 671 S.W.2d at 42; *see McCall,* 113 S.W.3d at 481 (affirming aggravated robbery conviction of appellant who ran out of store with cigarettes when asked to produce identification with credit card, punched cashier who pursued him, and attempted to run down cashier and customer); *Oggletree v. State,* 851 S.W.2d 367, 369–70 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd) (affirming aggravat-

ed robbery conviction of appellant who stole meat from grocery store, avoided immediate capture, but returned to store where employees held accomplice and threatened them with a knife; holding that appellant's departure from scene of crime and his return to threaten employees in attempt to liberate confederate "without intervening circumstances" meant that "[a] rational trier of fact could conclude that appellant displayed his knife during immediate flight from the theft").

■ Here, when the elements of aggravated robbery as alleged in the indictment are compared with the elements of theft, it is evident that the elements of theft are "established by proof of the same or less than all the facts required to establish the commission of the offense charged." *See Hall,* 225 S.W.3d at 536. Theft, by whatever method committed, is necessarily included in the alleged elements of the greater offense of robbery when, as in the instant case, the indictment alleges that the accused threatened another or place him in fear of imminent bodily injury or death "in the course of committing theft." *Earls v. State,* 707 S.W.2d 82, 84–85 (Tex. Crim.App.1986). Therefore, the first prong of the test for inclusion of an instruction on the lesser-included offense of theft is satisfied. *See Hall,* 225 S.W.3d at 535–36.

The next question is whether some evidence exists in the record of this case that would permit a rational jury to find that if appellant is guilty, he is guilty only of theft, satisfying the second prong of the test for a lesser-included-offense instruction. *See* Tex.Code Crim. Proc. Ann. art. 37.09; *Hall,* 225 S.W.3d at 536. In order for appellant to have been entitled to an instruction on the lesser-included offense of theft, some evidence in the record had to negate the jury's finding that appellant intentionally or knowingly "use[d] or ex-

hibit[ed] a deadly weapon *in the course of committing theft.*" *See* Tex. Penal Code Ann. § 29.03 (emphasis added); *see Robinson v. State,* 174 S.W.3d 320, 333 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd); *see also Holiday v. State,* 14 S.W.3d 784, 788 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) ("To be entitled to a jury instruction on the lesser included offense of theft, there must have been evidence proving appellant committed a theft of [the complainant's] property, but did not . . . threaten him in any way.").

Because there is unrebutted evidence in the record that appellant threatened Mondragon with a knife, causing him to be in fear of imminent bodily injury or death, appellant can show that he was entitled to an instruction on the lesser-included offense of theft of the nail gun only if there is evidence in the record from which a jury rationally could conclude that appellant's threat to Mondragon did not occur in the course of committing or in immediate flight after committing the theft.

Here, Mondragon learned of the theft of his nail gun when Jose came running towards him yelling, "[H]e's got a knife." At that point, Mondragon saw appellant carrying something he could not identify, and he called the police. After appellant went into an apartment, Mondragon and his father "posted up on the side of the building making sure [appellant] didn't leave while the police got there." When appellant walked out of the apartment five to twenty minutes later, Mondragon was still "posted up" to wait for the arrival of the deputies. Appellant walked over to a group of unidentified men and spoke with them for approximately five minutes. Then, as appellant passed Mondragon and his father on his return to the apartment, appellant saw Mondragon watching him, approached him, and waved his knife at Mondragon's chest. Appellant walked off after Mondragon put his hand in his pocket and pretended he had a gun. Approximately fifteen minutes to half an hour passed between the theft and the assault. The police arrived five to ten minutes later and found appellant hiding in the bedroom of the apartment in possession of both the knife and the nail gun.

We conclude that there is no evidence that would permit a rational jury to find that appellant did not have the intent to maintain control over the nail gun he had stolen from Mondragon when he "use[d] or exhibit[ed] a deadly weapon," namely a knife, to threaten Mondragon on his way back to the apartment where he had left the nail gun, and thus appellant could not have been found guilty only of theft. *See* Tex. Penal Code Ann. § 31.03(a) (providing that person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property") *Hall,* 225 S.W.3d at 536; *White,* 671 S.W.2d at 42; *McCall,* 113 S.W.3d at 480–81. We hold that appellant was not entitled to a lesser-included instruction on theft in the jury charge. *See Hall,* 225 S.W.3d at 536.

We overrule appellant's sole issue.

### Correction of the Judgment

The State requests that this Court correct the written judgment to reflect that appellant entered pleas of true to two prior felony convictions in the enhancement paragraphs and the jury found the allegations in the enhancement paragraphs true.

A Court of Appeals may modify a trial court's judgment and affirm it as modified. Tex.R.App. P. 43.2(b); *see Bigley v. State,* 865 S.W.2d 26, 27–28 (Tex. Crim.App.1993) (holding that courts of appeals may modify judgments); *French v. State,* 830 S.W.2d 607, 609 (Tex.Crim.App. 1992) (holding that "an appellate court has authority to reform a judgment to include

an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source").

Here, appellant entered pleas of true to the two enhancement paragraphs, and the jury found these enhancement paragraphs true. The written judgment, however, incorrectly states "N/A" for appellant's "Plea to 1st Enhancement Paragraph" and for his "Plea to 2nd Enhancement Paragraph." The written judgment also incorrectly states "N/A" for the jury's "Findings on 1st Enhancement Paragraph" and its "Findings on 2nd Enhancement Paragraph."

We modify the written judgment to reflect that appellant entered a plea of true to the two enhancement paragraphs and that the jury found these enhancement paragraphs true. *See* TEX.R.APP. P. 43.2(b) (allowing courts of appeal to modify judgments and affirm as modified); *Bigley*, 865 S.W.2d at 27–28 (holding that courts of appeal may modify judgments).

## Conclusion

We modify the judgment to reflect that appellant entered a plea of "true" to each of the two enhancement paragraphs and that the jury found each of the enhancement paragraphs true. We affirm the judgment as modified.

Justice ALCALA, dissenting.

ELSA ALCALA, Justice, dissenting.

I respectfully dissent from the majority opinion's decision to affirm the conviction of appellant, Melvin Charles Sweed, for aggravated robbery. I would reverse and remand the case because the trial court harmfully erred by failing to instruct the jury on the lesser-included offense of theft.

The dispute between the majority and dissenting opinions centers on whether the appellant threatened Sixto Mondragon, the complainant, with assault with a deadly weapon while appellant was in the *immediate flight* after the attempt or commission of theft. *See* TEX. PENAL CODE ANN. §§ 29.01(1), 29.02(a)(2), 29.03(a)(2) (Vernon 2003) (emphasis added). "'Immediate flight' is not specifically defined in the Penal Code," but it has been defined as follows:

> Present; at once; without delay; not deferred by any interval of time. In this sense, the word, without any very precise signification, denotes that action is or must be taken either instantly or without any considerable loss of time.

*Thomas v. State*, 708 S.W.2d 580, 581 (Tex. App.-Eastland 1986, writ ref'd) (describing definition from dictionary).

Although I agree with the majority opinion that the first prong for establishing lesser-included offenses is met here due to the elements of theft being subsumed by the elements of aggravated robbery, unlike the majority opinion I conclude the second prong for establishing a lesser-included offense is met because there is more than a scintilla of evidence that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offenses of theft and assault. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim.App.2007) (explaining two prongs for establishing lesser included offenses). Here, the evidence gives rise to at least two, reasonably equal, plausible inferences: either that appellant committed aggravated robbery because the assault occurred while in the immediate flight from theft or, alternatively, that he committed separate offenses of assault and theft because he assaulted the complainant when he was not in *immediate* flight from the theft. *See Evans v. State*, 202 S.W.3d 158, 165 (Tex. Crim.App.2006) (stating, "[I]t is clearly the jury that makes the choice of which inference to accept" when the evidence "gives

rise to at least two, reasonably equal, plausible inferences").

There is more than a scintilla of evidence from which the jury could determine appellant was not guilty of aggravated robbery and instead guilty of an assault plus a theft because the assault was not in the immediate flight from the theft. The record shows the events transpired over approximately 30 minutes. Mondragon testified that his work crews were at an apartment complex when he heard one of his workers, Jose, screaming that someone had pulled a knife on him. Jose did not state why the person had pulled a knife on him, and the indictment does not list Jose as a complainant. When Mondragon reached Jose, Mondragon saw appellant and another man walking toward him, as the unknown man acted as if he did not know what was going on. Appellant left alone with a nail gun in his arms and entered an apartment. As they awaited the arrival of police officers, Mondragon and another person positioned themselves on the side of the building to make sure appellant did not leave the apartment. After a short while, appellant left the apartment wearing different clothes. Appellant left the area, walked past the pool, and walked to another building that was about 150 feet away, where he spoke to a group of men for about five minutes before he started walking back toward the apartment where he had been staying. Appellant saw Mondragon, who had remained watching him the entire time. Appellant recognized him and threatened him with a knife causing him to fear that he would be stabbed. Appellant then fled into the apartment. When police officers arrived later, they arrested appellant and found a knife and the nail gun in the apartment.

These events show that after the theft of the nail gun from the work crew, eight activities occurred before appellant threatened the complainant with a knife: (1) appellant left the area where the crew was working, (2) entered the apartment, (3) left the stolen item inside the apartment, (4) changed clothes, (5) left the apartment, (6) walked across a parking lot, (7) spoke to a group of people, and (8) walked back across the parking lot towards the apartment. The jury could have reasonably decided the assault was not in the immediate flight after the theft because:

- the theft occurred at the crew's work site at the apartment, but the assault occurred in a parking lot;
- there was a 30 minute gap of time between the time appellant stole the nail gun and the time appellant assaulted the complainant with a knife; and
- the many intervening activities by appellant that occurred between the theft and assault—leaving the stolen item inside the apartment, changing clothes, and leaving the apartment to speak with a group of people across the parking lot—are intervening circumstances showing a gap in the events.

The jury, therefore, reasonably could have determined the theft and assault were two separate events because the assault did not occur in the *immediate* flight from the commission of the theft, as required for aggravated robbery. *See* TEX. PENAL CODE ANN. §§ 29.01(1), 29.02(a)(2), 29.03(a)(2); *Thomas*, 708 S.W.2d at 581 (immediate means "at once; without delay; not deferred by any interval of time").

The situation here is procedurally distinguishable from cases on which the majority opinion relies because those cases address only whether the evidence is legally sufficient to establish aggravated robbery and are silent on whether a lesser-included-offense instruction should have been given. *See White v. State,* 671 S.W.2d 40,

41–42 (Tex.Crim.App.1984); *Lightner v. State*, 535 S.W.2d 176, 177–78 (Tex.Crim. App.1976); *McCall v. State*, 113 S.W.3d 479, 480–81 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *Oggletree v. State*, 851 S.W.2d 367, 369–70 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (establishing test for legal sufficiency of evidence by viewing evidence in light most favorable to jury's verdict). As noted above, I agree the evidence is legally sufficient to uphold appellant's conviction for aggravated robbery. The issue here is whether a lesser-included-offense instruction should have been given, which is a topic not addressed by any of these cases.

Importantly, each of the cases cited by the majority opinion are also factually distinguishable in that they fail to show the type of intervening circumstances present here. In *McCall*, McCall ran out of a store when he stole cigarettes; he was chased by the cashier and customer who subdued him until he managed to escape into his car; and he then drove directly toward the cashier and customer, who feared for their lives as they fled. *McCall*, 113 S.W.3d at 480. In holding the evidence was legally sufficient to establish aggravated robbery in *Oggletree*, we said,

> [A]ppellant engaged in one continuous, criminal episode, not in a series of incidents. He did not accomplish a successful escape; rather, for reasons unclear in the record, he remained in the vicinity and reappeared to attempt to liberate his confederate. His flight across the parking lot and his reappearance to threaten [the employees] occurred without intervening circumstances. Appellant himself chose to continue his criminal episode by returning to assist his accomplice. A rational trier of fact could conclude that appellant displayed

his knife during immediate flight from the theft.

*Oggletree*, 851 S.W.2d at 369–70. In *White*, when Carl Sherlock tried to take the complainant's purse, he let go when she refused to release it, and he was chased by two bystanders, who were shot by appellant who was in a waiting getaway car. *White*, 671 S.W.2d at 41. In *Lightner*, Lightner stole money from a cash register, he was immediately followed by a store employee as he ran to his car, and he got into his car and drove it towards the officer who was immediately attempting to arrest him. *Lightner*, 535 S.W.2d at 176–77. As the court in *Lightner* stated,

> Appellant contends that he was not in immediate flight when apprehended by Officer Collins. Officer Collins caught appellant about 100 yards from the scene of the theft. He started to follow appellant to the back of the shopping center shortly after appellant had entered the rear of the parking lot. Appellant was handcuffed and in custody within seven to nine minutes after the theft.

*Id.* at 178. In contrast to each of these cases that show immediate events with no intervening circumstances, the jury could have reasonably decided that here the assault was not in the immediate flight after the theft because of the combination of circumstances that show the theft and assault occurred at different locations thirty minutes apart after appellant had left the stolen item behind in his apartment, changed clothes, and left his apartment to speak to a group of people at another location at the apartment complex.

Although this case is in the same procedural posture as *Royster v. State*, 622 S.W.2d 442 (Tex.Crim.App.1981), this situation is factually distinguishable from it. In *Royster*, the Court of Criminal Appeals held the trial court did not err by refusing

the lesser-included offense instructions of assault and theft when Royster was charged with aggravated robbery. *Royster*, 622 S.W.2d at 447. After he snatched a purse from a woman, Royster cut the man who chased him immediately following the theft. *Id.* at 446. Unlike *Royster*, the jury could have reasonably decided that appellant was not in immediate flight from the theft because after the theft and before the assault, appellant left the stolen property in an apartment, changed clothes, walked across a parking lot, and conversed with a group of people. *See id.*

The situation here is similar to a case recently reversed by the Amarillo Court of Appeals. *Jones v. State*, 280 S.W.3d 294, 297–98 (Tex.App.-Amarillo 2007, pet. ref'd). There, the court stated,

> In the present case, the record discloses that the issue of threatening or placing the victim in fear of imminent bodily injury or death was hotly contested. . . . [T]he testimony and the inferences that a jury may make from that testimony is a question for the jury to decide under the appropriate instruction from the court. The initial police officer on the scene indicated that the offense was one of "purse snatching." After reviewing the record, it appears there was at least more than a scintilla of evidence to support the theory that appellant was guilty of only the offense of theft.

*Id.* This case is similar to *Jones* in that the matter of whether the assault was in the immediate flight from theft is properly a question for the jury to decide based on the evidence and the inferences made by the jury. *See id.*

As the United States Supreme Court long ago explained when reversing a conviction for failure to instruct on a lesser-included offense,

> The question is whether the court erred in refusing this request. The evidence as to manslaughter need not be uncontradicted or in any way conclusive upon the question; so long as there is some evidence upon the subject, the proper weight to be given it is for the jury to determine. If there were any evidence which tended to show such a state of facts as might bring the crime within the grade of manslaughter, it then became a proper question for the jury to say whether the evidence were true and whether it showed that the crime was manslaughter instead of murder. . . . The evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter or an act performed in self defence [sic], and yet, so long as there was some evidence relevant to the issue of manslaughter, the credibility and force of such evidence must be for the jury, and cannot be matter of law for the decision of the court.

*Stevenson v. United States*, 162 U.S. 313, 314–15, 16 S.Ct. 839, 839, 40 L.Ed. 980 (1896).

As *Stevenson* shows, the error here is one that has been happening repeatedly for over one hundred years. *See id.* This error is easily preventable by one simple rule: Judges should not refuse to allow juries to decide questions of fact. *See id.* The question of whether the assault was in the immediate flight from the theft is a matter for a jury to decide based on what inferences may be drawn from circumstantial evidence. *See Evans*, 202 S.W.3d at 165 (holding court must defer to jury when there are two reasonable inference that can be drawn from circumstantial evidence). I conclude there is more than a scintilla of evidence from which the jury reasonably could determine that theft is a valid, rational alternative to aggravated robbery. I, therefore, would hold that the

trial court erred by refusing to instruct the jury on the lesser-included offense of theft.