**Affirmed and Opinion filed October 9, 2018.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-17-00763-CR

**PHILLIP ANTHONY ZAGONE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Court Cause No. 17-27555**

## O P I N I O N

Appellant Phillip Anthony Zagone was convicted of aggravated robbery and sentenced to five years in prison. In this appeal, appellant complains that the evidence is legally insufficient to establish that his threatening conduct occurred while in the course of committing theft of property. Finding that the evidence is legally sufficient to support appellant's conviction, we affirm.[1]

---

[1] The case was transferred to this court from the Ninth Court of Appeals by Texas Supreme

*Background*

On September 27, 2016, Stephen Morgan, an employee at Cowboy Harley Davidson, parked his motorcycle behind the store along with other employees who rode their motorcycles to work. Eric Sheffield, another employee of Cowboy, was informed by one of Cowboy's technicians that "[s]omebody's messing with the employee bikes." The store was not open at that time of the morning. Sheffield went outside and saw that appellant, who was wearing a helmet, was "messing with the switches and knobs" on Morgan's motorcycle. The ignition switch was on because the lights were on, but the engine was not. A key is not necessary to start the engine on most Harley Davidson motorcycles, including that particular model. It appeared to Sheffield that appellant was trying to start Morgan's motorcycle. When Sheffield was close enough, he saw that appellant was wearing Morgan's helmet. Morgan did not give anyone permission that morning to ride his motorcycle.

Sheffield asked appellant what he was doing, to which appellant responded that he was looking at the motorcycles. Sheffield said to appellant that he did not "need to be touching these bikes" because they belonged to employees and grabbed Morgan's helmet off appellant's head. Sheffield told appellant to leave. Appellant started to walk away and then turned around and told Sheffield that he was there to pick up a motorcycle.

Appellant was wearing a backpack. Sheffield noticed "a big chunk of aluminum, [which] looked like a motorcycle part in his backpack." Sheffield assumed that appellant had stolen a motorcycle part and grabbed the aluminum item. Appellant said the aluminum item was his and told Sheffield to give it back.

---

Court Transfer Order Misc. Docket No. 17-9138, issued September 28, 2017. Because of the transfer, we must decide the case in accordance with the precedent of the Ninth Court of Appeals if our decisions otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

Sheffield threw the item in the grass and told appellant to leave. Appellant headed towards a Honda dealership, but Sheffield told him that was the wrong direction, so appellant reversed course.

As appellant started walking away, Sheffield heard someone yell, "That's the guy that stole the Honda last week[.]"[2] Sheffield grabbed appellant by both straps on the backpack and was going to try to hold him on the ground for the police. Sheffield then heard someone say "Knife." Sheffield pushed appellant away and saw a knife in appellant's hand as appellant was making a "slashing motion towards [him]." Appellant then stood there for a couple of seconds with the knife in his hand. Other employees had approached the scene behind Sheffield, and appellant ran away, and Sheffield and the other employees followed appellant off Cowboy's property.

The police apprehended appellant and brought him back to Cowboy about fifteen to twenty minutes later. Appellant was charged with and convicted of aggravated robbery and was sentenced to five years' incarceration.

In his sole issue in this appeal, appellant argues that the evidence is legally insufficient to support his conviction.

*Standard of Review*

When reviewing sufficiency of the evidence, we consider the combined and cumulative force of all admitted evidence and any reasonable inferences therefrom in the light most favorable to the verdict to determine whether the jury was rationally justified in its decision. *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by

---

[2] There was no objection to this testimony. The prosecutor told Sheffield: "Let's not worry about what other people said."

reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id.* This standard applies equally to both circumstantial and direct evidence. *Id.* Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

*Analysis*

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02(a). A person commits theft if he unlawfully appropriates property without the owner's consent. *Id*. § 31.03(a), (b)(1). "'In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft. *Id*. § 29.01(1). A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. *Id*. § 29.03(a)(2). "'Deadly weapon'" is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07 (a)(17).

Appellant contends that he was not in immediate flight after the attempted commission, or the commission of the theft of Morgan's motorcycle when he threatened Sheffield with the knife. The State disagrees. Both sides cite *Sweed v. State* in support of their respective positions. 351 S.W.3d 63 (Tex. Crim. App. 2011).

In *Sweed,* in which the sole issue was whether the trial court erred when it

refused the appellant's request to give an instruction in the jury charge on theft as a lesser-included offense, the Texas Court of Criminal Appeals defined the term "'immediate' as '[o]ccurring without delay; instant,' '[n]ot separated by other persons or things,' or '[h]aving a direct impact; without an intervening agency'" and applied the definition to the facts of that case. *Id.* at 69 n.5 (quoting Black's Law Dictionary 751 (7th ed. 1999)).

The complainant in *Sweed* observed the defendant among his work crew at a construction site. *Id.* at 64. Later that day, the complainant heard one of his employees scream that someone had pulled a knife on him. *Id.* The employee told the complainant that the defendant had stolen a nail gun. *Id.* The complainant saw the defendant running away with something in his hands. *Id.* The defendant was seen entering an apartment, and the complainant and his father positioned themselves to watch the apartment until the police arrived. *Id.*

Between five and twenty minutes after the defendant had entered the apartment, the complainant saw the defendant leave the apartment empty-handed and wearing different clothing. *Id.* at 65. The defendant walked across the apartment complex parking lot and spoke to a group of men for about five minutes and then walked back in the direction of the apartment. *Id.* The defendant, seeing and recognizing the complainant, approached him and waived a knife at chest level. *Id.* When the defendant was about three feet away, the complainant put his hands in his pockets and acted like he had a gun. *Id.* Without saying anything, the defendant walked away and returned to the apartment. *Id.* These events all occurred over a period of fifteen to thirty minutes. *Id.* The police arrived five to ten minutes later, entered the apartment, located the defendant, and recovered the missing nail gun. *Id.*

The defendant was indicted and convicted of aggravated robbery. *Id.* The trial court refused the defendant's request for a lesser-included offense instruction on

5

theft. *Id.* The defendant argued that the trial court erred in denying his request. The court of appeals affirmed.

The Court of Criminal Appeals observed that if the State could not prove that the defendant was "in the course of committing theft," then the theft and the assault were separate events, and the defendant could not be found guilty of robbery or aggravated robbery. *Id.* at 69. Because the defendant did not dispute that he committed the theft, the primary issue was whether he had pulled a knife on the complainant during or in immediate flight after the commission of the theft. *Id.*

The court concluded that the fifteen to thirty-minute delay and the intervening activities, including the defendant's act of leaving the apartment, rationally could be interpreted as evidence that he was no longer fleeing from the theft. *Id.* A jury rationally could conclude that the assault was a separate event from the theft, and the defendant could have been guilty only of the lesser offense of theft, not aggravated robbery. *Id.* Therefore, based on the evidence presented at trial, the court held that a jury instruction on the lesser-included offense of the theft should have been given and reversed and remanded to the court of appeals to conduct a harm analysis. *Id.* at 69–70.

Appellant argues that under the definition of "immediate" set forth in *Sweed*, if he had pulled the knife and threatened Sheffield when Sheffield pulled the helmet off his head, that would have "occurred without delay" and "not [have been] separated by other persons or things." Instead, according to appellant, the "separation of persons or things" occurred when he started to leave and changed direction in response to Sheffield's orders to leave, and Sheffield was the person who caused "the separation by other persons or things" because he ordered appellant to leave and appellant initially followed Sheffield's orders. Appellant then stopped and engaged Sheffield in further conversation. Appellant further asserts that another

6

employee was an "intervening agency" or caused another "separation" from the attempted theft of Morgan's motorcycle by yelling for Sheffield to "grab" appellant, which resulted in appellant pulling the knife on Sheffield. Although this case is procedurally different from *Sweed,* the definition of "immediate" is instructive. However, the facts of this case are distinguishable from those in *Sweed*. Here, during the very short time from when Sheffield first confronted appellant to when appellant pulled the knife, appellant had not actually left the site of the attempted theft and continued to be engaged in conversation with Sheffield. There was no intervening agency such as contemplated by *Sweed.* Therefore, applying the definition of "immediate" set forth in *Sweed* does not render the attempted theft and the assault separate offenses.

The facts of this case are more similar to *Oggletree v. State*, 851 S.W.2d 367 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). In that case, two employees of an AppleTree grocery store, Corley and Eaton, observed the defendant loading packages of meat in plastic bags. *Id.* at 367. Another man entered the grocery store and asked for paper bags with which to clean out his car; he left the store, got into his car, but did not drive away. *Id.* Over two hours later, Corley saw the defendant approach the front of the store carrying plastic bags full of packages of meat. *Id.* Corley and Eaton called for the defendant to stop, but he instead began running across the parking lot. Corley chased the defendant, and Eaton spotted the man who asked for paper bags sitting in his car and tried to detain the driver. *Id.* at 367–68. Corley called 911 and joined Eaton at the car to wait for the police. *Id.* at 368. The defendant returned to the car with a knife and told the employees to let the driver go and approached Corley with the knife threatening, "I'll get you." *Id.*

The *Oggletree* court noted that neither the Penal Code nor case law defined "immediate flight." *Id.* at 369. The court stated that the appellant engaged in one

7

continuous, criminal episode, not in a series of independent incidents. *Id.* The defendant's flight across the parking lot and his reappearance to threaten Corley occurred without intervening circumstances. *Id.* at 369–70. The court held that a rational trier of fact could conclude that the defendant displayed the knife during the immediate flight from theft. *Id.* at 370.

*Oggletree* predates *Sweed*, but the court used reasoning very similar to that in *Sweed*. The court concluded there was an unbroken chain of events with no intervening circumstances. As in *Oggletree*, from the time appellant attempted to take Morgan's motorcycle to the time he pulled the knife on Sheffield, appellant was engaged in one continuous criminal episode without any intervening events. Considering all the evidence in the record, a rational jury could conclude that the appellant used the knife against Sheffield in a threatening manner during an immediate flight from the attempted theft. We overrule appellant's only issue.

### Conclusion

Having overruled appellant's sole issue in this appeal, we affirm the judgment of the trial court.

/s/     Martha Hill Jamison
Justice

Panel consists of Chief Justice Frost and Justices Christopher and Jamison.
Publish — Tex. R. App. P. 47.2(b)