**Jimmy CAMACHO, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–91–014–CR.**

Court of Appeals of Texas, Fort Worth.

Jan. 24, 1992.

Earl R. Waddell III, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Betty Marshall, Charles Brandenberg, and Renee Harris, Asst. Dist. Attys., Fort Worth, for state.

Before JOE SPURLOCK, II, FARRIS and MEYERS, JJ.

**OPINION ON MOTION
FOR REHEARING**

FARRIS, Justice.

We grant appellant's motion for rehearing, withdraw our previous opinion and

judgment in this case, and substitute the following opinion and judgment.

Jimmy Camacho appeals his conviction of two counts of aggravated robbery raising three points of error: (1) his right against double jeopardy was violated by the State's indictment of two separate offenses of aggravated robbery when there was actually only one offense committed; (2) the trial court erred in submitting a charge authorizing the jury to convict of two separate offenses of aggravated robbery which error contributed to Camacho's punishment; and (3) there was insufficient evidence to show that Camacho committed a theft.

We overrule Camacho's first point holding Camacho did not suffer double jeopardy, and as such, Camacho's second point need not be addressed. We hold that the evidence of theft was sufficient and overrule Camacho's third point. The judgment of the trial court is affirmed.

On January 19, 1990, Virgil M. Oakes, manager of the Colonial Cafeteria at Cityview, had just returned from the bank with change to be used for the evening shift. Oakes had gotten out of his car when an unknown man holding a shotgun approached him and told Oakes to give him the money or "I'll blow your brains out." Oakes gave the assailant the money. The assailant then ran to the rear of the cafeteria.

Oakes could not identify the assailant but described him as about five foot nine or ten, 155–160 pounds, with a mustache and chin beard and wearing blue jeans, a dark coat, a dark hat, and dark sunglasses with a metal rim. Oakes could not testify that Camacho was the assailant at trial and had actually identified another man as the assailant at a police lineup.

During the robbery, Rudy Good, the cafeteria's food service manager, looked out the window to see Oakes' hands in the air and the assailant running around the corner of the building. Good could not see the man's face but described him as wearing a black and white plaid wool jacket, a dark shirt, possibly blue, a ball cap and sunglasses and was carrying something heavy. As he saw this, he also heard people screaming that Oakes was in trouble. Good went to the back of the cafeteria and was met by a man with a sawed-off shotgun who also threatened to blow his brains out. Good testified that the man told Good to lie down on the ground, and that the man then got into a dark blue Cutlass Supreme with a partial license plate number of 701 or 710. Good later identified Camacho, in a photo lineup, a live lineup, and at trial, as the man he had seen.

Another Colonial employee, Michael Jack Huckaby, was in the dining room when he heard two other employees shout that Oakes was in trouble. Huckaby went outside the cafeteria and went around the corner of the building where he saw Good lying on the ground and motioning him to keep back. Huckaby decided to go around the back edge of the building and look at the license plate of the car as it was leaving. Huckaby then went back inside and phoned the police to tell them that the car was a sporty-type, dark blue or black GM car, such as a Chevrolet, Pontiac or Oldsmobile with license plate number 701–KBO. Both Huckaby and Good were able to identify a photo of the car at trial.

Camacho was arrested two days later while driving a 1984 dark blue Oldsmobile Cutlass with license plate number 701–KBQ. Camacho has a goatee and mustache, is five foot six and weighs 140 pounds.

A jury convicted Camacho of the aggravated robberies of Good and Oakes, also finding that Camacho had committed robbery by threats on two prior occasions, and assessed him two 50–year sentences.

We address points one and two together since they both complain of double jeopardy. We note at the beginning that no Texas cases are directly on point with the facts in the present case.

■ The State argues that two aggravated robberies were committed, citing cases which discuss the nature of the offense of aggravated robbery and emphasize that *aggravated robbery is no longer a form of theft, but rather is a form of assault,* and as such it is unnecessary to allege the

elements of theft in an aggravated robbery. *Hightower v. State*, 629 S.W.2d 920, 922 (Tex.Crim.App. [Panel Op.] 1981); *Ex Parte Lucas*, 574 S.W.2d 162, 163 (Tex. Crim.App. [Panel Op.] 1978); *see also Morgan v. State*, 650 S.W.2d 920, 923 (Tex. App.—Tyler 1983, pet. ref'd). The significance of this reasoning is that the legislature intended the statute to be result oriented, that is, the aggravated robbery would be complete with the injury or threat of injury to each individual.

An examination of the applicable statutes supports the State's argument. What separates robbery from theft is the human element, that is, if in the course of committing theft the defendant causes bodily injury to another or places another in fear of imminent bodily injury or death, the defendant has then committed robbery. *Compare* TEX.PENAL CODE ANN. § 31.03 (Theft) (Vernon 1989 & Supp.1992) *with* TEX.PENAL CODE ANN. § 29.02 (Robbery) (Vernon 1989). Robbery becomes aggravated if the defendant causes serious bodily injury or uses or exhibits a dangerous weapon. TEX.PENAL CODE ANN. § 29.03 (Vernon Supp.1992). Therefore, the law protects victims who may be threatened or harmed during the commission of a theft, rather than property. Although the robbery statutes appear under the heading of "Offenses Against Property," the intent to protect persons is clear. In addition, case law holds that the victim of the theft and the victim of the robbery, that is, the person assaulted, need not be the same. *White v. State*, 671 S.W.2d 40, 41–2 (Tex.Crim.App.1984); *Servance v. State*, 537 S.W.2d 753, 754 (Tex.Crim.App. 1976). In fact, actual commission of a theft is not even a prerequisite to robbery. *White*, 671 S.W.2d at 41; *Servance*, 537 S.W.2d at 754.

This logic also comports with recent decisions that have held a defendant's actions in a single incident, that harmed separate people, constitute repeated violations of the same penal statute rather than a single violation. *See, e.g., Phillips v. State*, 787 S.W.2d 391 (Tex.Crim.App.1990) (holding that defendant while driving intoxicated and injuring two people had committed two aggravated assaults); *Spradling v. State*, 773 S.W.2d 553 (Tex.Crim.App.1989) (holding that when defendant killed two women while driving that two offenses of failure to stop and render aid committed); *Ex Parte Rathmell*, 717 S.W.2d 33 (Tex.Crim. App.1986) (holding that defendant while driving intoxicated and killing two women had committed two offenses of involuntary manslaughter).

In addition, in a recent decision the Court of Criminal Appeals stated, "separate convictions for violations of the same statute committed against different victims are not barred, at least where they are tried in the same proceeding." *Garcia v. State*, 806 S.W.2d 835, 837 (Tex.Crim.App.1990), *overruled on other grounds*, 806 S.W.2d 845 (Tex.Crim.App.1991), *citing Spradling*, 773 S.W.2d 553. This language implies that Camacho could be convicted and punished twice for violations of the *same* statute, *i.e.*, aggravated robbery, without suffering double jeopardy if the convictions arose from the same trial. *Id.* This reasoning is analogous to cases holding when a defendant commits an unlawful act, there are as many separate and distinct offenses as there are persons against whom the defendant has committed the unlawful act. *Ex Parte Trout*, 715 S.W.2d 426, 428 (Tex. App.—Waco 1986, pet. ref'd); *Harrison v. State*, 713 S.W.2d 760, 763 (Tex.App.— Houston [14th Dist.] 1986, pet. ref'd).

We must distinguish this case from *Simmons v. State*, *Ex Parte Crosby* and *Blakely v. State*. *See Simmons v. State*, 745 S.W.2d 348 (Tex.Crim.App.1987); *Ex Parte Crosby*, 703 S.W.2d 683 (Tex.Crim. App.1986); *Blakely v. State*, 814 S.W.2d 433 (Tex.App.—Austin 1991, pet. ref'd). In each of those cases, the defendant was convicted of two aggravated robberies which arose from one theft. *See Simmons*, 745 S.W.2d at 349; *Crosby*, 703 S.W.2d at 684; *Blakely*, 814 S.W.2d at 434. The Court of Criminal Appeals determined that theft is an integral part of aggravated robbery. *Crosby*, 703 S.W.2d at 685. *But see Hightower*, 629 S.W.2d at 922 (aggravated robbery is form of assault). As such, there can be but one aggravated robbery if

there is only one theft. *Id.* However, in each of those cases the additional conviction arose from a second trial. *See, e.g., Simmons,* 745 S.W.2d at 349; *Crosby,* 703 S.W.2d at 684; *Blakely,* 814 S.W.2d at 434. *Cf. Garcia,* 806 S.W.2d at 837, *citing Spradling,* 773 S.W.2d 553 (proof of same lesser included offense to show violation of same statute against different victims bars successive prosecution for those violations).

In contrast, Camacho was convicted of two aggravated robberies that arose from the single theft of money but the convictions were had in a single trial. Thus, we hold that Camacho's right against double jeopardy was not violated and we overrule Camacho's first point of error. Moreover, since the Court of Criminal Appeals has also held that aggravated robbery is a form of assault, rather than theft, this result makes sense. *See Hightower,* 629 S.W.2d at 922; *Lucas,* 574 S.W.2d at 163.

Camacho's second point of error addresses his punishment as it relates to a violation of his right against double jeopardy; it is moot and we need not address it. Camacho's second point is overruled.

■ In his last point of error, Camacho complains that there was insufficient evidence to convict because the evidence did not prove identity beyond a reasonable doubt. In a circumstantial evidence case, the appropriate standard of review is, if after viewing all of the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Freeman v. State,* 654 S.W.2d 450, 454 (Tex.Crim.App.1983). The fact that there may be conflicting testimony will not render the evidence insufficient. *Arnold v. State,* 659 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd). If the court finds that the evidence supports a reasonable hypothesis, other than the defendant's guilt, the evidence is insufficient; but not every fact must point independently and directly to the defendant's guilt. *Gribble v. State,* 808 S.W.2d 65, 74 (Tex.Crim.App.1990); *Freeman,* 654

S.W.2d at 454. If the combined and cumulative force of all the incriminating circumstances warrants a finding of guilt, the evidence is sufficient. *Gribble,* 808 S.W.2d at 74; *Flores v. State,* 551 S.W.2d 364, 367 (Tex.Crim.App.1977); *Herndon v. State,* 543 S.W.2d 109, 121 (Tex.Crim.App.1976).

■ In particular, Camacho focuses upon the fact that Oakes identified a different man in a physical lineup and the fact that the only witness who identified Camacho, Good, did not actually see Camacho take the money from Oakes. In addition, Good testified that there were two other men in the car as it left the rear of the cafeteria. Camacho maintains that all of the evidence after the car left, including the lineups, the car description, the license plate number and Camacho's arrest, served only to bolster Good's identification of Camacho. Therefore, Camacho asserts that the only affirmative evidence linking Camacho to the crime are the two physical descriptions given by Oakes and Good, which are different enough to warrant a reasonable doubt.

We disagree. Although the description of the coat worn by the assailant was described as plaid by Good, and merely dark by Oakes, and there was a discrepancy in height given by Good and Oakes, we still hold that there was sufficient evidence of identity. Oakes testified that a lone man committed the theft, that he was wearing a dark hat, dark sunglasses with a metal rim, had a mustache and chin beard and weighed 155–160 pounds. Good testified that he saw a lone man carrying something heavy running around the building. When Good got to the back of the building he was confronted by a lone man with a beard and goatee, wearing a dark baseball cap, dark green military sunglasses and weighing 155–165 pounds. Good also identified Camacho at a photo lineup, a live lineup and at trial. Both Oakes and Good testified that the man who confronted each of them threatened to blow their brains out. This evidence amounts to sufficient evidence of identity.

We overrule Camacho's third point of error. The judgment of the trial court is affirmed.