*1574-14*

ORIGINAL

No. PD-1574-14

IN THE COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 17 2015

Abel Acosta, Clerk

CHRISTOPHER PENN
Appellant

v.

THE STATE OF TEXAS
Appellee

FILED IN
COURT OF CRIMINAL APPEALS

FEB 20 2015

Abel Acosta, Clerk

Review sought from the Court of Appeals

IN THE COURT OF APPEALS

FOR THE FOURTEENTH DISTRICT OF TEXAS

HOUSTON, TEXAS

Case No. 14-1300263-CR

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

On Appeal from Cause Number 1345118

From the 185th District Court of Harris County, Texas

Christophen Penn #1847503
Mark W. Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886
Pro-Se

## TABLE OF CONTESTS

Table Of Contests.................................................i

Index Of Authorities.............................................ii

Statement Regarding Oral Argument................................1

Statement Of The Case............................................2

Statement Of Procedural History..................................3

Grounds For Review...............................................4

   Ground One:The evidence is insufficient to support the in-
   dictment and jury charge that Mr.Penn was robbing Reginald
   Williams and then shot Reginald Williams. In fact, the ev-
   idence supports Mr.Penn robbing a different individual.

   Ground Two:Mr.Penn was denied due process because there
   was no evidence in the record that he was robbing Regin-
   ald Williams.

   Ground Three:The automatic life sentence without parole
   for a conviction of capital murder violated Due Process
   and the individualized sentencing mandated by the United
   States Supreme Court.

   Ground Four:The court costs should be deleted because
   there is insufficient evidence to support the $504 cost.

Argument.........................................................5

Prayer For Relief................................................21

Certificate Of Service...........................................21

Appendix.........................................................22

i

## INDEX OF AUTHORITIES

**Cases:**

Adames v. State,
     353 S.W.3d 854 (Tex.Crim.App. 2011)......................8

Blue v. State,
     41 S.W.3d 129 (Tex.Crim.App. 2000)......................10

Byrd v. State,
     336 S.W.3d 242 (Tex.Crim.App. 2011)......................8

Duran v. State,
     363 S.W.3d 719 (Tex.App.-Houston [1st Dist.] 2011,pet.
     ref'd)............................................13

Eddings v. Oklahoma,
     455 U.S. 104 (1982)................................11

Glasser v. United States,
     315 U.S. 60, 80 (1942)................................6

Graham v. Florida,
     506 U.S._, 130 S.Ct. 2011 (2010)................12,14,17

Harmelin v. Michigan,
     501 U.S. 957 (1991)................................12,14

Heitman v. State,
     815 S.W.2d 681 (Tex.Crim.App. 1991)......................17

Jackson v. State,
     652 S.W.2d 415 (Tex.Crim.App. 1983)......................7

Jackson v. Virginia,
     443 U.S. 307 (1979)................................6

Jelks v. State,
     397 S.W.3d 759 (Tex.App.-Houston [14th Dist.] 2013,
     pet. filed.)............................................20

Johnson v. State,
     389 S.W.3d 513 (Tex.App.-Houston [14th Dist.] 2012,
     pet., granted................................18,19

Jones v. State,
     944 S.W.2d 642(Tex.Crim.App. 1996)......................6

Lockett v. Ohio,
     438 U.S. 586 (1978)................................11,14

Louis v. State,
     393 S.W.3d 246 (Tex.Crim.App. 2012)................7,8

McCormick v. Unites States,
     500 U.S. 257 (1991)................................8,9

Miller v. Alabama,
     132 S.Ct. 2455 (2012)........................11,13,14,16,17

Oregon v. Hass,
     420 U.S. 714 (1975)...............................17

Penry v. Lynaugh,
     492 U.S. 302 (1989)...............................11

Perry v. Del Rio,
     67 S.W.3d 85 (Tex. 2001).............................19

Roper v. Simmons,
     543 U.S. 551 (2005)...............................14

Smith v. Spisak,
     558 U.S. 139 (2010)...............................11

Trop v. Dulles,
     356 U.S, 86 (1958)................................11

United States v. Casilla,
     20 F.3d 600 (5th Cir. 1994)...........................6

Walker v. State,
     701 S.W.2d 2 (Tex.App.-Corpus Christi 1985, pet.
     ref'd.............................................6,7

Wilkerson v. State,
     347 S.W.3d 720 (Tex.App.-Houston [14th Dist.] 2011,
     pet. ref'd).......................................12

Woodson v. North Carolina,
     428 U.S. 280 (1976)..............................10,11

Wooley v. State,
     273 S.W.3d 260 (Tex.Crim.App. 2008)...................9

## Constitutions and Statutes

U.S. CONST. amend. XIV.......................................19

TEX. CONST. Art. I, § 13.................................16,17,18

TEX. CONST. Art. I, § 19....................................19

Tex. Penal Code Ann. § 12.31(a)(2)...............12,13,15,16,18

Tex. Penal Code § 12.42(c)(1)...............................13

Tex. Penal Code Ann. § 19.03.................................3

## STATEMENT REGARDING ORAL ARGUMENT

As relying on the record of evidence oral argument is not request-
ed by Appellant, if the Court of Criminal Appeals of Austin, Texas
deems necessary to have oral argument then do so.

## STATEMENT OF THE CASE

Mr.Penn was not arrested at the scene, until 1 year and 1 month later by detective. Mr.Penn was identified as the shooter of Reginald Williams. He was never shown to have robbed or attempted to rob Mr.Williams. There is a fatal variance between what was pleaded and what was proven. There is no weapon entered into evidence or fingerprints of Mr.Penn at the scene. The caliber of the bullet in the victim had never been identified and if so what was established. No answer was returned to the jury. (C.R. at 147). There was no autospy report of Mr.Williams entered into evidence to prove the cause of death. The evidence is legally insufficient to support the conviction for capital murder. Futher, this variance denied Mr.Penn due process to have the State prove what was charged in the indictment.

Because of the statutory punishment scheme for capital murder, Mr. Penn was never allowed to present a picture of who he is. There was no mitigation offered. No explanation. There was not a consideration of the whole man.

There is not an official cost bill in the record. There are some page purporting to be a cost bill, but there is no evidence the trial court ever saw those pages. The evidence is insuufficient to support the court costs.

Under T.R.A.P. 66.3 (a)throu(f) reason for granting review should be applied for this Petition For Discertionary Review on Appellant petition. This Court, the Court Of Criminal Appeals now has jurisdiction pursuant to T.R.A.P. 68.2.

2

## STATEMENT OF PROCEDURAL HISTORY

This is an appeal from the felony offense of capital murder. (C.R. at 149). See Tex. Penal Code Ann. § 19.03. Mr.Penn pleaded not guilty and a jury convicted him; he was automatically sentenced to life without parole in the Institutional Division of the Texas Department of Criminal Justice. (C.R. at 149). Timely notice of appeal was filed and granted. (C.R. at 154). The Brief For Appellant was filed in the Court Of Appeals For The Fourteenth District Of Texas Houston, Texas and Memorandum Opinion filed September 16,2014 was affirmed. Appellant's Petition For Discertionary Review is due on December 16, 2014. Appellant filed First Motion For Time Extension To File Pro-Se Petition For Discertionary Review was granted to February 17,2015.

# GROUNDS FOR REVIEW

Ground One:The evidence is insufficient to support the indictment and jury charge that Mr.Penn was robbing Reginald Williams and then shot Reginald Williams. In fact, the evidence supports Mr.Penn was robbing a different individual.

Ground Two:Mr.Penn was denied due process because there was no evidence in the record that he was robbing Reginald Williams.

Ground Three:The automatic life sentence without parole for a conviction of capital murder violated Due Process and the individualized sentencing mandate by the United States Supreme Court.

Ground Four:The court costs should be deleted because there is insufficient evidence to support the $504 cost.

ARGUMENT

Ground One: The evidence is insufficient to support the indictment and jury charge that MR. Penn was robbing Reginald Williams and then shot Reginald Williams. In fact, the evidence supports Mr. Penn was robbing a different individual.

The indictment avers, in pertinent part:

CHRISTOPHER LAMONT PENN, hereafter styled the Defendant, heretofore on or about March 11, 2011, did then and there unlawfully, while in the course of commmitting and attempting to commit the ROBBERY of a REGINALD WILLIAMS by SHOOTING REGINALD WILLIAMS WITH A DEADLY WEAPON, NAMELY A FIREARM.

The jury charge tracked the language of the indictment and authorized the jury to convict:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 11th day of March, 2011, in Harris County, Texas, the defendant, Christopher Lamont Penn, did then anf there unlawfully, while in the course of committing or attempting to commit the robbery of Reginald Williams, intentionally cause the death of Reginald Williams by shooting Reginald Williams with a deadly weapon, namely a firearm.

(C.R. at 138).

It was Markquis who stated that Mr. Penn entered the apartment and grabbed him and was asking "Where is it at?" (3 R.R. at 67). Markquis's brother had the drugs. (3 R.R. at 68). There was never testimony from Markquis that Mr. Penn was trying to rob Reginald Williams. Iesha Fletcher testified that Mr. Penn came in an demanded drugs and then pulled a gun on Markquis. (3 R.R. at 230-32). Anthony Smith testified the plan all along was for he and Mr. Penn to rob "Black,:" (Markquis). (4 R.R. at 82-83.

The evidence was overwhelming that the persons robbed were Markquis Richard, and possibly his brother Malquan. The theory presented by the State was that Mr. Penn and his brother deliberately chose that apartment to steal the drugs and money of the Richard brother. Mr. Penn and his brother had been to the apartment earlier in the day and th-

5

en specifically returned to rob the Richard brothers. While Reginald Williams was present in the house - there was not one iota of evidence ever presented that Mr.Penn robbed or attempted to rob Reginald Williams.

In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and also would have found against appellant on any defensive issue beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. See Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App.1996). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury. See id. All reasonable inferences from the evidence are construed in favor of the verdict. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Casilla, 20 F.3d 600, 602 (5th Cir. 1994).

In Walker v. State, a conviction for involuntary manslaughter was reversed on insufficient evidence because the defendant had been convicted based upon am allegation of "excessive rate of speed and relessness." Walker v. State, 701 S.W.2d 2, 3 (Tex.App.-Corpus Christi 1985, pet. ref'd). The Court reversed, explained "we know that terrible collision occurred. We have a "strong suspicion" that appellant was attempting to negotiate a curve at a higher rate of speed than was safe, but this has not been established by evidence." Id., 701 S.W.2d at 3. Interestingly, on rehearing, the Court noted that the State reminded the Court there was evidence of alcohol which had

6

been alleged in one count in the case. Id., 701 S.W.2d at 4. However, the conviction and appeal involved the State's prosecution upon the count alleging excessive speed and recklessness, necessitating a reversal for insufficient evidence. Id.

In Jackson v. State, the defendant was convicted of causing the death of her daughter by striking her on the head with her elbows. Jackson v. State, 652 S.W.2d 415, 416 (Tex.Crim.App. 1983). The State's case rested upon the admission of the defendant that she had hit her child upon the head twice before she died and the medical examiner's testimony regarding different injuries to the child. Id., 652 S.W.2d at 416-17, 419. The Court of Criminal Appeals reversed the conviction as legally insufficient because the doctor could not determine which injury had caused the death and further, "the State failed to prove that the elbow blows confessed to by appellant caused the hemorrhage which ultimately caused the child's death." Id., 652 S.W.2d at 419.

The Court of Criminal Appeals affirmed the reversal of a non-death capital murder conviction because the jury could not have inferred from the totality of the circumstantial evidence viewed in a light most favorable to its verdict that the defendant intended to cause the death of a child. Louis v. State, 393 S.W.3d 246, 251-52 (Tex. Crim.App. 2012). In Louis, the defendant had beaten the child, but then left for work and unbeknownst to him, his wife continued with the abuse. Id. One of the rationales for the court's decision was "the absence of any evidence showing that the child could or would have died from the injuries caused by appellant alone-the jury could not have reasonable inferred that appellant intended to cause the

7

death of the child." Id.

Similarly, there is evidence of the murder. There is evidence of a robbery of Markquis and his brother. But there was no evidence of the robbery or attempted robbery of Reginald Williams. He was a tragic bystander to the robbery.

Fatal Variance

"A 'variance' occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial. Byrd v. State, 336 S.W.3d 242, 246 (Tex.Crim.App. 2011). "A conviction that contains a material variance that fails to give the defendant sufficient notice or would not bar a second prosecution for the same murder requires reversal, even when the evidence is otherwise legally sufficient to support the conviction." Byrd. 336 S.W.3d at 248.

The conviction for capital murder fails because the evidence is insufficient to prove Reginald Williams was the victim of a robbery or attempted robbery.

> Ground Two:Mr.Penn was denied due process because there was
> no evidence in the record that he was robbing Reginald Will-
> iams.

While there may have been evidence Mr.Penn robbed Markquis or his brother there was no evidence Reginald Williams was robbed. Mr.Penn was deprived of due process because of the failure of proof. In A-dames v. State, 353 S.W.3d 854, 859-60 (Tex.Crim.App. 2011) cert. denied, 132 S.Ct. 1763, 182 L.Ed. 2d 533 (2012), the Court of Criminal Appeals explained it was error to sustain a conviction based upon a charge for which the defendant was not indicted for:

> The McCormick/Dunn/Cole rule applies only when a defendant is con-
> victed on a charge that was neither alleged in an indictment nor
> presented to the jury, as the defendant is then not given suffici-
> ent notice as to the specific charge. "It is as much a violation

8

of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." Here, appellant was given notice in the indictment that he was charge with the offense of capital murder. The State presented evidence of that offense, and the jury received instructions on that offense, albeit imperfect as applied to the facts of this case. This is a case of jury-charge error distinct from an evidentiary insufficiency; appellant was convicted on a theory, guilt as a party, that was not presented to the jury, as opposed to a charge for which he was never tried.

Mr.Penn was not indicted for the robbery or attempted robbery of he was charge with the attempted robbery of Reginald Williams. While the evidence may be sufficient as to Markquis - it is wholly insufficient to Reginald Williams.

"Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury." Wooley v. State, 273 S.W.3d 260, 271-72 (Tex. Crim.App. 2008), citing McCormick v. United States, 500 U.S. 257, 270, n. 8 (1991).

These is sufficient evidence to support the conviction. Mr.Penn was denied due process and the case should be reversed and an acquittal rendered.

Ground Three:The automatic life sentence without parole for a conviction of capital murder violated Due Process and the individualized sentencing mandated by the United States Supreme Court.

During Mr.Penn's testimony at the guilty/innocence phase, he explained a tiny bit of who he was:

> We just never had the family that, you know, some people may have you know. It just - it wasn't ever like that, you know. I didn't - I never got what I wanted for Christmas, you know, I never was that child but, you know, it is what it is. I just suck it up. I'm my own man.

(4 R.R. at 159-60).

There was no objection to the mandatory sentencing scheme. For this Court to consider the issue, there would have to be fundamental error necessitating no objection for preservation. Blue v. State, 41 S. W.3d 129, 131 (Tex.Crim.App. 2000).

No punishment evidence was presented in Mr.Penn's case because of the automatic nature of the punishment statute. Neither the judge nor jury heard about who John Wesley Smith - Also known as Christopher Penn - was before he was sentenced to life imprisonment without parole.

Factors that mitigate an individual defendant's moral culpability "ste[m] from the diverse frailies of humankind." Woodson v. North Carolina, 428 U.S. 280, 304 (1976)(plurality opinion of Stewart, Powell, and Stevens,JJ.). As the Supreme Court reasoned:

> "For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." Consideration of both the offender and the offense in order to arrive at a just and appropriate sentence has been viewed as a progressive and humanizing development. (Internal citations omitted).

Woodson, 428 U.S. at 304. Consideration of both the offender and

10

the offense in order to arrive at a just and appropriate sentence has been viewed as a progressive and humanizing development. Woodson, 428 U.S. at 304. There was no consideration of the "offender" in order to arrive at a just and appropriate sentence. None.

The Constitutional Importance of Mitigating Evidence

The denial of an opportunity to present evidence and argument in favor of mitigation must be considered harmful. there is a reasonable possibility that the jury would have assessed a punishment less than life without parole. Further, it is not possible to know what mitigating evidence would have been offered, so the Court cannotconclude beyond a reasonable doubt that the inability to present mitigation was harmless.

Eighth Amendment jurisprudence is guided by "the evolving standards of decency that mark the progress of a maturing society." Mill- v. Alabama, 132 S.Ct. 2455, 2463 (2012), quoting Trop v. Dulles, 356 U.S. 86, 101 (1958). In a constitutional system of evolving standards, it is legitimate to argue that a well-founded mitigation doctrine could 'evolve' by expanding from death-penalty law and juvenile law into adult non-death cases.

In the context of death-penalty cases, it has long b n the rule that a judge or jury must have a way to consider mitigating circumstances when assessing punishment. That rule has been established in a line of cases that includes Lockett v. Ohio, 438 U.S. 586 (1978), Eddings v. Oklahoma, 455 U.S. 104 (1982), Penry v. Lynaugh, 492 U.S. 302 (1989), and Smith v. Spisak, 558 U.S. 139 (2010). As the Court in Eddings put it, a sentencing jury or judge should not be "precluded from considering, as a mitigating factor, any aspect of a

11

defendant's character and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death. "Odviously, if a statute made the death penalty automatic, with no opporttunity for the fact-finder to consider mitigating evidence, such a statue would be unconstitutional.

The Supreme Court declined more than 20 years ago to extend its death-penalty jurisprudence regarding mitigation evidence to other types of cases. See Harmelin v. Michigan, 501 U.S. 957 (1991). In Harmelin, as in this case, a statute made life without parole mandatory. The Supreme Court has not considered the merits of that issue then, but in the wake of Hamelin, Texas courts consistently have declined to hold that the Texas "automatic life" provision, as the sole alternative to the death penalty following capital murder convictions, is unconstitutional. Recent cᵔ es reaching that conclusion include Wilkerson v. State, 347 S.W.3d 720 (Tex.App.-Houston [14th Dist.] 2011, pet., ref'd) and several memorandum opinions.

In the context of juvenile justice, however, the law has, in fact, evolved. In Graham v. Florida, 560 U.S._, 130 S.Ct. 2011 (2010), the Supreme Court applied an Eighth Amendment analysis to a juvenile's punishment for a non-homicide offense, and found that a life sentence was categorically excessive. That was inconsistent with another portion of Harmelin, and it laid the foundation for a re-examination of Part IV of Harmelin, and protion of the opinion concerned with the preclusive effect of "life without parole" on the consideration of mitigating circumstances. Cases like Wilkerson and its progeny relied on the distinction between the two analytical thread in Harmelin to find that the mandatory sentence dictated by Tex. Penal Code Ann. §

12

12.31(a)(2) did not violate Eighth Amendment.

A year after the Graham decision, a panel of this Court held in June of 2011 that a mandatory life sentence for an adult convicted of aggravated sexual assault of a child and indecency with a child, under Tex. Penal Code § 12.42(c)(1) did not violate the U.S. of Texas Constitutions. See Duran v. State, 363 S.W.3d 719, 724 (Tex.App.-Houston [1st Dist] 2011, pet. ref'd). However, the case did not involve mandatory life without parole, as this case does. It also did not involve a finding of guilt that possibly was based on the law of parties, rather than the defendant's own conduct, as this case does. Further, Duran was decided before the Supreme Court issued its opinion in Miller v. Alabama, which demonstrated an even further development of the law on this issue than had already ocurred before this Court opinion in Duran. Like the Supreme Court, this Court should recognize that the standards for what constitutes cruel and unusual punishment have continued to evolve.

The Decision in Miller v. Alabama

In Miller v. Alabama, The Supreme Court held that life without parole, as applied to a juvenile charge with capital murder, "implicate[s] two strands of precedent reflecting our concern with proportionate punishment." The first strand consisted of cases that "adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of the penalty." The second strand consisted of "cases [in which] we have prohibited mandatory imposition of capital punishment, requiring that sentencing authorities consider the chatacteristics of a defendant and the details of his offense before sentencing him to death."

13

It was "the confluence of these two lines of precedent," Miller declared, that "lead to the conclusion that mandatory life-without-parole sentences for juveniles violated the Eighth Amendment." Miller, 132 S.Ct. at 2464.

The majority opinion did not explicitly overrule Part IV of Harmelin. Instead, it said that Harmelin was distinguishable because Harmelin did not deal with a child, and conclude that "our ruling...neither overrules nor undermines nor conflicts with Harmelin." Id. at 2470.

The holding of Miller does not conflict with Harmelin, but the reasoning of Miller does. The dissent by Justice Thomas accurately summmed up the effect: "The Court now uses [Roper v. Simmons, 543 U.S. 551 (2005)] and Graham to jettison Harmelin's clear distinction between capital and noncapital cases and to apply the former to noncapital juvenile offenders." Id. at 2486. In short, standards have now "evolved" so that the death penalty is not a sine qua for having an Eighth Amendment right to consideration of mitigating circumstances at sentencing.

On the surface, it might seem that life without parole does serve the penological purpose of retribution, but there are two problems with that conclusion. First cases from Lockett to Graham support the principle that the degree of retribution that is appropriate may depend on whether there are mitigating factors. An automatic assessment of life without parole deprives both the sentencing court and the parole authorities of the information necessary to make a proper decision as to how much imprisonment is needed to serve the purpose of retribution. It is one thing for a judge or jury to hear all of mitigating evidence and then conclude that, despite any mitigating

14

factors, life without parole is appropriate. It is different when, as in this cause, the sentence is pronounced as soon as the guilty verdict is received.

Second, the incremental retribution which results from life without parole is imposed at the end of the sentence, i.e. in the period after forty years elapses (when parole eligibility, though not guaranteed parole, would have occurred under the old law). At that point, retribution is being inflicted on an old man or woman, perhaps an old man or woman who never intended to kill anyone. The likelihood that a person released in his upper fifties, sixties or seventies will be a threat to society is so very small that to insist than an elderly person die in prison for an offense many decades earlier is unsupportable as a public-safety measure.

Finally, Section 12.31(a)(2), the mandatory life without parole statute creates a logistical problem, even if parole law were to be changed in the future so that the possibility of parole for inmates like Mr.Penn was restored. Much of the mitigation evidence that would be germane to parole review might not be available many years in the future. For example, information about a defendant's childhood problems usually must come from parents or other persons who were adults when the defendant was a child. Those potential witnesses are likely to be available many years in the future. Similarly, availability of many records diminishes over time. Due to the judicial treatment of a mandatory life sentence as an automatic sentence, trial courts are not porviding an adequate record of possibly mitigating circumstances, either for later judicial review or later parole review.

The Texas Legislature's move to a mandatory sentence of life without parole under which mitigating circumstances can never be considered,

15

does not represent an "evolving standard of decency," but rather a step backwards to the harsh and simplistic penal theories of the past. This Court should hold that Section 12.31(a)(2) is unconstitutional because there is no mechanism for consideration of mitigating circumstances in a verdict, no mechanism for recording mitigating evidence for later consideration, and no opportunity for parole authorities to consider mitigating evidence (or other information) in deciding whether a person is a suitable candidate for parole.

The right to be free from excessive sanctions "flow from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." Miller, 132 S.Ct. at 2463 (internal quotations omitted). Section 12.31(a) should be declared unconstitutional because it prohibits the proportioning of punishment to an offender. Even if this Court does not find the statute to be defective, at least the "without parole" provision should be struck down. This would provide the Board of Pardons and Parole the opportunity to consider mitigating evidence, which is considerably better than the situation created by the present statute.

The automatic punishment of life without parole violates the Texas Constitution because there is no vehicle for consideration of mitigating evidence to justify a less severe sentence, either by jury or by parole authorities.

Texas Constitutional Law

The Texas Constitutional counterpart to the Eight Amendment, TEX. CONST.Art. I, § 13, also is violated by a mandatory life sentence without parole. The rationale for this argument, i.e., the inability of the defendant to present mitigating evidence, is the same as the preceding Eighth Amendment argument. This Court should hold that Sec-

16

tion 12.31(a)(2) violates TEX.COST.Art. I, § 13.

Federal constitutional law merely provides the "floor" for a defendant's rights. State law may provide greater protection. Heitman v. State, 815 S.W.2d 681 (Tex.Crim.App. 1991), pointed out that "a state is free as a matter of its own law to impose greater restrictions on police activity than those the Supreme Court holds to be necessary upon federal constitutional standards." Id. at 683, citing Oregon v. Hass, 420 U.S. 714 (1975). What was said in Heitman about "police" (executive department) action also applies to legislative action, i.e., the passage of laws that undermine constitutional safeguards.

Heitman recognized that federal constitutional case law may be persuasive as to Texas constitutional law, but is not controlling. Just as Texas courts can consider Harmelin, but are not limited by it, in construing Texas constitutional law, they also can consider Graham and Miller. That does not merely mean following the holding of Supreme Court cases, but also considering their reasoning. Nothing prohibits a Texas court from taking the reasoning in Miller and holding that it applies to the Texas Constitution.

The text of Article I, Section 13, itself provides a reason for a more expansive interpretation. The section reads in pertinent part: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted..." The Texas Constitution refers to "cruel or unusual"punishment, rather than "cruel and unusual" punishment, as the Eight Amendment does. The use of "or" in the Texas Constitution means an automatic life imprisonment in unconstitutional if it is either cruel or unusual. Likewise, it is unusual for a statute to impose a harsh punishment automatically. In the entire Penal Code, only two categories of offenders capital murder defendant

17

in cases where the death penalty is waived, and certain repeat sex of-fender-face automatic life sentences.

Furhtermore, the particularly strong respect in Texas for trial by jury gives a reason for interpreting Article I. § 13 more broadly than Harmelin interpreted the Eighth Amendment. Texas is one of the few states with jury sentencing. What an irony that the defendant who needs it most - a capital murder defendant - is denied one of the main benefits of jury sentencing, i.e., the consideration of possibly miti-gating circumstances.

The harm analysis is the same as the analysis for the federal consti-tutional challenge, which is incorporated here by reference. As with federal constitutional error, Mr.Penn asks that Section 12.31(a) be struck down entirely, with a remand for retrial for murder in this cause. At the very least, the "without parole" provision of the statue should be nullified.

**Ground Four:The court costs should be deleted because there is insufficient evid nc  to support the $504 cost.**

In Johnson v. State, 389 S.W.3d 513 (Tex.App.-Houston [14th Dist.] 2012, pet.granted), this Court considered this exact issue. In that case, Johnson pled guilty to aggravated robbery and was sentence to a prison sentence. The judgement in his case included $234.00 in court costs. 389 S.W.3d at 515. However, there was no bill of costs in the record. 389 S.W.3d at 515. In ordering that the judgement be modified to delete the assessment of court costs, the Court wrote:

> In the face of a sufficiency challenge, an order to supplement the record, and a complete lack of evidence supporting the tr-ial court's assessment of costs, we will not presume the as-sesment of costs was accurate. See Armstrong, 340 S.W.3d at 767 (remanding for consideration of sufficiency of the evid-ence to support costs assessment).

18

Id., 5.

The Fourteenth Amendment of the United States Constitution guards against deprivation of life, liberty, or property by the State without due process of law. U.S.CONST.amend.XIV.Article I, Section 19 of the Texas Constitution requires due course of law. TEX.CONST.art. I, § 19; pPerry v. Del Rio, 67 S.W3d 85, 92 (Tex.2001). At a minimum, due coure requires notice and an opportunity to be heard, at a meaningful time and in a meaningful manner. Perry, 67 S.W.3d at 92.

> This Court has previous rejected records that were not before the trial court:

> Regardless, there is no indication that this printout was ever brought to the attention of the judge. Cf. Chambers v. State, 149 Tex.Crim. 400, 194 S.W.2d 774, 775 (1946) (holding that appellate court would not consider ex parte documents that were not filed in the trial court); Lamb v. State, 931 S.W.2d 611, 613 (Tex.App.-Amarillo 1996, pet, ref'd) (holding items that had been tendered after judgement was fendered, and were neither filed nor offered as proof in court below, would not be considered on appeal).

Johnson, 389 S.W.3d at 515, n. 1. This new "cost bill" oddly has no date for the creation of it. A review of the Talbe of Contents of the Clerk's record shows a filed date for every filed document except this J.I.M.S. Cost bill. (C.R. at table of contents). The certified date on the document is dated 6 days after the judgement and has a signature line with what looks to be the name of "Kathy Tidele." (C. R. at 153). Writing for this Court, Justice Busby explained why that sort of signature is unacceptable:

> While the computer screen printout bears a dated signature, the individual who signed the document is not identified. Nothing in the record shows whether the person who signed the printout is an officer who charged the cost or an officer who is entitled to receive payment for the cost. Further, there is no evidence in the record that this computer screen printout was presented to the trial judge before he included the specific dollar amount in the judgement. Therefore, we cannot consider the computer screen printout

as an appropriate bill of costs in this case. Jelks v. State, 397 S.W.3d 759, 760 (Tex.App.-Houston [14th Dist.] 2013, pet. filed). This simply is not a cost bill as contemplated and required by law. The evidence is insufficient and the court costs should be struck.

## PRAYER FOR RELIEF

Mr.Penn prays this Court reverse the conviction and acquit or alternatively remand for a new trial. He also prays the Court delete the court costs because there is insufficient evidence.

Respectfully submitted,

Christopher Penn
Appellant Pro-Se
TDCJ-ID No.1847503
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

## CERTIFICATE OF SERVICE

I certify that I provided a copy of the foregoing Appellant's Petition For Discretionary Review to the Harris County District Attorney by hand delivery to the Sixth Floor at 1201 Franklin Street, Harris County District Attorneys Office on this 13 day of February, 2015.

Christopher Penn
Appellant Pro-Se
TDCJ-ID No.1847503
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

21

APPENDIX

Affirmed and Memorandum Opinion filed September 16, 2014.



In The

# Fourteenth Court of Appeals

## NO. 14-13-00263-CR

## CHRISTOPHER LAMONT PENN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 185th District Court
### Harris County, Texas
### Trial Court Cause No. 1345118

## MEMORANDUM OPINION

A jury convicted appellant Christopher Lamont Penn of capital murder[1] and the trial court assessed a mandatory punishment at life imprisonment without parole.[2] Appellant challenges his conviction in four issues, arguing that (1) the evidence is legally insufficient to support his capital murder conviction because the

---

[1] *See* Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2014).

[2] *See* Tex. Penal Code Ann. § 12.31(a)(2) (Vernon Supp. 2014).

State did not establish that appellant robbed or attempted to rob the complainant Reginald Williams; (2) appellant was denied due process because there is no evidence to support a finding that appellant robbed the complainant; (3) his mandatory punishment of life imprisonment without parole violates the United States and Texas Constitutions because it does not allow consideration of mitigating evidence; and (4) the court costs should be deleted because the record does not contain a proper bill of costs. We affirm.

## BACKGROUND

On March 11, 2011, appellant told his brother Anthony Smith that he needed money and asked about a drug dealer Smith knew. The drug dealer, Markquis Richard, previously had sold marijuana to Smith. Appellant conveyed to Smith that he intended to go to Richard's apartment to rob him of drugs and money. Appellant threatened to make Smith stop living in appellant's home if Smith did not help with the robbery. Appellant and Smith then drove to Richard's apartment; they planned to rob Richard only if he was alone.

Appellant was armed with a knife when he and Smith arrived at Richard's apartment. Richard's brother Malquan King was present in the apartment; Ieasha Fletcher, two other women, and complainant Reginald Williams also were in Richard's apartment helping Richard pack to move the next day. Appellant and Smith remained in Richard's apartment briefly, then left so appellant could retrieve his gun.

Appellant, armed with his gun, and Smith later returned to Richard's apartment while Richard's brother and friends still were at the apartment. Smith asked to buy marijuana. As Richard turned to tell his brother to retrieve the marijuana, appellant grabbed Richard and pointed the gun at Richard's face. Appellant told Richard, "You know what time it is. Lay it down," which Richard

2

understood to mean appellant was "fixing to rob" him. Appellant laid Richard on the ground, pointed and waived the gun at everyone present in the apartment, and asked repeatedly, "[W]here is it at?" King pulled a bag out of his pocket containing a small amount of marijuana and stated that they did not have any more.

At this point, the complainant jumped up from a nearby bed and ran toward a bedroom. Appellant fired his gun at the complainant, chased the complainant into the bedroom, and fired again; the complainant then jumped out of a window.

Richard got up and ran out of the apartment to find a gun or get help. Smith took the bag of marijuana from King, and then left the apartment with appellant. Fletcher ran upstairs to her apartment; she found the complainant close by on the ground screaming for help. The complainant soon died from a gunshot wound to the torso.

Appellant was charged with capital murder; the indictment alleged that appellant intentionally caused the death of the complainant "while in the course of committing and attempting to commit" the robbery of the complainant. A jury found appellant guilty of capital murder, and the trial court imposed a mandatory sentence of life imprisonment without parole. Appellant filed a timely appeal.

## ANALYSIS

### I. Sufficiency of the Evidence

Appellant argues in his first issue that the evidence is legally insufficient to support his capital murder conviction because the State did not establish that appellant robbed or attempted to rob the complainant. According to appellant's brief, "[T]he evidence supports [that appellant] was robbing a different individual" when he shot the complainant.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). In making this review, an appellate court considers all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). This standard of review applies to cases involving both direct and circumstantial evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and the standard of review on appeal is the same for both direct and circumstantial evidence cases. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

The jury is the exclusive judge of the credibility of witnesses and the weight of the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Id.* Therefore, the testimony of a single eyewitness can be enough to support a conviction. *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

A person commits the offense of capital murder if the person intentionally or knowingly causes the death of an individual in the course of committing or attempting to commit robbery. *See* Tex. Penal Code Ann. § 19.02(a)(2) (Vernon

2011), § 19.03(a)(2) (Vernon Supp. 2014).

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, the person intentionally, knowingly, or recklessly (1) causes bodily injury to another; or (2) threatens or places another in fear of imminent bodily injury or death. *See* Tex. Penal Code Ann. § 29.02(a) (Vernon 2011).

A person commits theft if he appropriates property without the owner's consent and with intent to deprive the owner of the property. *See* Tex. Penal Code Ann. § 31.03(a), (b)(1) (Vernon Supp. 2014). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of theft." Tex. Penal Code Ann. § 29.01(1) (Vernon 2011).

Appellant does not challenge the sufficiency of the evidence establishing that he killed the complainant and robbed Markquis Richard and Malquan King. Appellant concedes in his brief that the "evidence was overwhelming that the persons robbed were Markquis Richard, and possibly his brother Malquan. . . . There is evidence of a robbery of Markquis and his brother."

Appellant instead challenges the sufficiency of the evidence to support his capital murder conviction by contending there is no evidence that he killed the *complainant* while robbing or attempting to rob the *complainant*. Appellant argues that the complainant was only a "bystander" to the robbery of Richard and King. Appellant contends he was not stealing or attempting to steal from the complainant when he shot the complainant; therefore, appellant contends he did not rob or attempt to rob the complainant.

In essence, appellant argues that the victim of the theft and the victim of the

5

robbery must be identical, and the individual assaulted in the course of committing theft must be the intended victim of the theft in order to commit a robbery. We disagree.

Theft is the underlying offense for a robbery. *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999). Robbery is a form of assault. *Id.*; *Boston v. State*, 373 S.W.3d 832, 839 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013). "[T]he offense of robbery includes any violence in the course of effectuating [a] theft as well as any violence while in immediate flight from the scene of the theft." *Lightner v. State*, 535 S.W.2d 176, 177 (Tex. Crim. App. 1976) (affirming aggravated robbery conviction of defendant who assaulted a police officer after stealing money from a cash register).

To prove robbery, the State is not required to prove that the complainant's property was taken. *See* Tex. Penal Code Ann. §§ 29.01(1), 29.02(a). "No completed theft is required for the proscribed conduct to constitute the offense of robbery." *White v. State*, 671 S.W.2d 40, 41 (Tex. Crim. App. 1984); *Sweed v. State*, 321 S.W.3d 42, 47 (Tex. App.—Houston [1st Dist.] 2010), *rev'd on other grounds*, 351 S.W.3d 63 (Tex. Crim. App. 2011); *Camacho v. State*, 825 S.W.2d 168, 170 (Tex. App.—Fort Worth 1992, pet. ref'd). "Nor is it necessary that the victim of the theft or attempted theft and the victim of the robbery be the same." *White*, 671 S.W.2d at 41-42 (affirming aggravated robbery conviction of getaway driver who shot pursuing bystander in order to free companion who had attempted to steal a purse); *Sweed*, 321 S.W.3d at 47 (affirming aggravated robbery conviction and holding appellant was not entitled to a lesser-included instruction on theft); *Camacho*, 825 S.W.2d at 170 (affirming conviction of two counts of aggravated robbery where defendant threatened one employee while stealing money from him and then threatened another employee before driving away in a

car).

There is ample evidence in this case that appellant and Smith went to Richard's apartment intending to steal drugs and money from Richard. Appellant grabbed Richard and pointed a gun at Richard's face. Appellant laid Richard on the ground, pointed and waived a gun at everyone present in the apartment, and asked repeatedly, "[W]here is it at?" Richard's brother King then pulled a bag with a small amount of marijuana out of his pocket. The complainant, who was among those present in the apartment, jumped up from a nearby bed at that point and ran toward a bedroom. Appellant immediately fired his gun at the complainant; chased the complainant into the bedroom; and fired at the complainant again, striking the complainant in the torso and killing him. Smith took the bag of marijuana from King and then left the apartment together with appellant.

This evidence is sufficient for a reasonable jury to conclude that appellant intentionally caused the complainant's death while in the course of committing the robbery of the complainant. This evidence is sufficient because the victim of the theft and the victim of the robbery need not be the same. *See White*, 671 S.W.2d at 41-42; *Sweed*, 321 S.W.3d at 47; *Camacho*, 825 S.W.2d at 170. Appellant committed robbery by intentionally causing bodily injury to the complainant in the course of committing the theft of Richard's marijuana and with intent to obtain control of the marijuana.

Accordingly, we reject appellant's contention that the evidence in this case is legally insufficient to support his capital murder conviction on the ground that there is no evidence that he killed the complainant in the course of robbing or attempting to rob the complainant. Thus, we conclude that the evidence is legally sufficient to support appellant's capital murder conviction.

We overrule appellant's first issue.

## II. Due Process

Appellant contends in his second issue that he was "denied due process because there was no evidence in the record that he was robbing" the complainant. Appellant cites *Adames v. State*, 353 S.W.3d 854, 859-60 (Tex. Crim. App. 2011), for this proposition: "[T]he Court of Criminal Appeals explained it was error to sustain a conviction based upon a charge for which the defendant was not indicted." Appellant also states that he "was not indicted for the robbery or attempted robbery of [Richard] – he was charged with the attempted robbery of [the complainant]. While the evidence may be sufficient as to [Richard] – it is wholly insufficient [a]s to [the complainant]." Appellant concludes his argument by stating that "[t]here is insufficient evidence to support the conviction. [Appellant] was denied due process and the case should be reversed and an acquittal rendered."

We reject appellant's contention. First, appellant was not convicted "based upon a charge for which [he] was not indicted." Appellant was indicted for intentionally causing the death of the complainant while in the course of committing and attempting to commit robbery; and the charge essentially tracked the indictment language. Second, we already have concluded that the evidence is legally sufficient to support the jury's finding that appellant robbed the complainant and thus is sufficient to support appellant's capital murder conviction. Accordingly, there is no due process violation as asserted by appellant.

We overrule appellant's second issue.

## III. Punishment

Appellant argues in his third issue that the automatic punishment of life without parole violates the Eighth Amendment of the United States Constitution and article 1, section 13 of the Texas Constitution because the sentencing scheme provided no opportunity for the consideration of mitigating evidence.

The Texas Rules of Appellate Procedure require a party to preserve error for appellate review by demonstrating the error on the record. Tex. R. App. P. 33.1(a); *Clark v. State*, 305 S.W.3d 351, 354 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 365 S.W.3d 333 (Tex. Crim. App. 2012). The party must make the complaint in a timely manner and state the grounds for the ruling that the complaining party seeks from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A). In raising the complaint on appeal, the party must ensure the issue is the same as the complaint or objection made during trial. *Clark*, 305 S.W.3d at 354. Even constitutional errors can be waived if a party fails to properly object to the errors at trial. *Id.* at 355. A challenge to the constitutionality of a statute may not be raised for the first time on appeal. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (facial challenges); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (as-applied challenges). Therefore, if a party's objection at trial does not correspond with its issue on appeal, the party has waived that issue. *Clark*, 305 S.W.3d at 354.

Appellant failed to preserve error by voicing his complaint in the trial court, and appellant concedes that "[t]here was no objection to the mandatory sentencing scheme" in the trial court. This court already has rejected a substantially similar complaint as asserted by appellant based on failure to preserve error in the trial court and held that this complaint did not constitute a complaint of fundamental

9

error. *Cerna v. State*, No. 14-12-01126-CR, 2014 WL 3908117, at *6 (Tex. App.—Houston [14th Dist.] Aug 12, 2014, no pet. h.); *see also Wilkerson v. State*, 347 S.W.3d 720, 722–23 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (rejecting similar complaint based on failure to preserve error in the trial court).

We overrule appellant's third issue.

## IV.    Court Costs

Appellant argues in his fourth issue that the assessed court costs should be deleted from the judgment because there is no bill of costs in the record. Appellant contends that a Harris County Justice Information Management System (JIMS) "Cost Bill Assessment" is not a proper bill of costs "as contemplated and required by law" because it was signed by a deputy clerk and dated six days after the trial court judgment was signed.

We review the assessment of court costs on appeal to determine if there is a basis for the costs, not to determine whether there was sufficient evidence offered at trial to prove each cost. *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). Traditional sufficiency-of-the-evidence standards of review do not apply. *Id.*

Generally, a bill of costs must (1) contain the items of cost, (2) be signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost, and (3) be certified. *Id.* at 392–93; *see* Tex. Crim. Proc. Code Ann. arts. 103.001, 103.006 (Vernon 2006). The Court of Criminal Appeals of Texas has held that a JIMS report constitutes an appropriate bill of costs if the report itemizes the accrued court costs in the appellant's case, contains a certification by the trial court clerk that the document is a true and correct copy of the original, and is signed by a deputy clerk. *Johnson*, 423 S.W.3d at 393.

10

The record in this case contains a computer-screen printout of the Harris County Justice Information Management System (JIMS) "Cost Bill Assessment." The JIMS report in this record is a compliant bill of costs because it contains an itemized list of costs in appellant's case, a certification by the district clerk that the document is a true and correct copy of the original, and a signature of a deputy district clerk. *See id.* at 392-93. That the bill of costs was not prepared until after the trial court signed the judgment does not defeat the lawfulness of the bill of costs. *Id.* at 394. Accordingly, appellant's argument provides no basis for relief. There being no challenge to any specific cost or the basis for the assessment of such cost, the bill of costs supports the costs assessed in the judgment. *See id.* at 395.

We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's four issues, we affirm the trial court's judgment.

/s/        William J. Boyce
                Justice

Panel consists of Justices Boyce, Busby and Wise.

Do not Publish — Tex. R. App. P. 47.2(b).